HAMILTON *v.* STATE.

(*Knoxville.* October 17, 1896.)

1. CHARGE OF COURT. *Erroneous as to reasonable doubt.*

It is reversible error for the Court to instruct the jury in a murder case, that they must, before they can acquit, be satisfied "beyond a reasonable doubt," of the facts relied upon by the defendant as constituting self-defense, although it appears that such instruction was the result of a mere oversight or *lapsus linguæ* of the Judge. (*Post, pp. 454, 455.*)

2. DISTRICT ATTORNEY. *Misconduct of.*

It is improper for the district attorney, in his argument before the jury in a criminal case, to state facts not put in evidence, or to make unseemly demonstrations towards the prisoner—as, by pointing the finger or shaking the fist at him—and the trial Judge should interfere promptly to correct such practices. (*Post, pp. 456, 457.*)

---

FROM KNOX.

---

Appeal in error from Criminal Court of Knox County. T. A. R. NELSON, J.

J. C. J. WILLIAMS for Hamilton.

Attorney-general PICKLE for State.

WILKES, J. The defendant was indicted for the murder of Walter Hansard. He was found guilty of murder in the first degree and sentenced to death,

and he has appealed. It appears that defendant and deceased had bad feeling between them, arising out of their attentions to the same young lady. They were both quite young men. The night before the killing occurred they attended a country church in company with young ladies. While at the church defendant and the lady he was with were interrupted by the turning of the window blinds near where they sat. It was repeated more than once, and defendant thereupon moved over next to the window and spat out of it. The deceased, who was on the outside, cursed him, and told him if he spit on him he would kill him. Defendant thereupon went out of the house and an angry altercation ensued, and defendant states that the deceased asked him to step out into the woods and they would settle it, to which he replied that that was no place for a difficulty, and left him and went into the house. On the next day the defendant passed by the house where deceased lived, and again, in the evening, repassed the same way along a public road. He had with him a companion named Butcher. The deceased was working in his shirt sleeves near the road stacking away some fodder. Defendant called to him to come down to the road, and the deceased left the barn and went down to the road and placed his hands upon the fence. At this point there is a material variance in the testimony. The theory of the State, supported by several witnesses, is that the deceased merely placed his hands upon the top of

the fence, when the defendant at once drew his pistol. The deceased, seeing this, started to run back up the hill to the barn or crib, and defendant shot at him five times while he ran, and the last shot struck the deceased in his left arm and side just as he was turning abruptly to the left in order to get behind a crib.

The defendant's version of the case, supported to a considerable extent by Butcher, is, that when the deceased came down to the fence, the defendant said to him: "Walter, did you mean to call me a son of a bitch last night?" that deceased replied, with an oath, "Yes, and you are," and started to cross the fence; and, as he did so, placed his hand upon his pocket as if to draw a weapon, and he, thereupon deeming himself in great danger, fired, and shot him while on the fence, and with his left side turned towards him. Defendant states that he had no intention when he called him of killing him or of having a difficulty, but for the purpose of coming to an amicable settlement between them, and that he shot in self-defense, and while deceased was on the fence, and not when he was running away up the hill. These were the two theories presented, each sustained by some evidence. In this condition of the record the Court charged the jury, among other things, as follows: "If the jury should be satisfied, beyond a reasonable doubt, that in the quarrel at the church the deceased had denounced defendant as a son of a bitch, and had invited him

out to fight, and that upon seeing deceased upon the following day, defendant simply asked him to come to the fence, and upon his doing so, defendant had called upon him for an explanation, whereupon deceased became highly incensed, denounced the defendant in vile language, mounted the fence, ran his hand into his pocket as if to draw a deadly weapon, and that, thereupon, defendant fired and killed deceased, he would not be guilty of any offense, and the jury ought to acquit, provided the defendant was in danger of his life, or of great bodily harm, or honestly believed himself so upon sufficient grounds; for a person, who, by mere words, provokes an assault, has a right to defend himself against an attack made upon him by his assailant,'' etc. The remainder of the charge being unexceptionable.

It is apparent that the learned trial Judge was submitting to the jury the very theory and hypothesis upon which defendant has based his defense, and his statement of the law was correct and unobjectionable except in one particular, which was clearly a mere oversight in the learned Judge, who is uniformly so accurate in his instructions to the jury. This error consisted in the statement that the jury, in order to give the defendant the benefit of his theory, as outlined by him, must be satisfied of its truth "beyond a reasonable doubt." This is so clearly erroneous that we are convinced that it was a mere oversight or *lapsus linguæ* of the learned Judge, but nevertheless it is a fatal error in this

charge. No prisoner is bound to establish his defense or innocence beyond a reasonable doubt. All doubts must be resolved in favor of the innocence of the prisoner, and the State must disprove his theory, and make out his guilt beyond a reasonable doubt in order to convict the defendant.

It is further assigned as error that the District Attorney used improper statements in his closing argument. According to defendant's affidavit, he stated "that he had been raised in that part of the county where the difficulty occurred, and he knew every hog-path in and about the church referred to in the evidence; that he had been over the ground when a boy, and he knew there was a road turning off the main road at the Lannine place, which ran down to Henry Hamilton's; that this latter road was a quarter of a mile nearer than to go around the public road; that defendant and Butcher had gone by Hartley's in the hope of seeing deceased; that they had seen him and called him to the road, and then defendant began the fire and shot him while he was fleeing for his life."

The fact that such statement was made by the District Attorney appears from the affidavit of the defendant, and two witnesses swear they heard substantially the language imputed to him by defendant—that is to say, "A pathway leads from the main road at the Lannine place to Henry Hamilton's house." There is no denial by the District Attorney that such statements were made. It is the duty

Hamilton *v.* State.

of the prosecuting attorney to see that exact justice is done every prisoner, and that he is tried according to law upon the evidence in the record, and it is as much incumbent on him to see that the defendant is not prejudiced in any way in his right to have a fair trial as it is to see him punished if he be really guilty. The District Attorney has no right to make statements in argument based upon his own knowledge, or upon anything else that is not contained in the record. He should be as vigilant to see the prisoner protected from such statements as he is to see that the State is protected by an actual presentation of the evidence as it is in the record. He should treat all prisoners as the law regards them, as innocent citizens, until the contrary is shown, and while on trial the prisoner is entitled to respectful treatment, and should neither be prejudiced by statements of fact not in evidence nor by an insulting manner when he is powerless to protect himself. Pointing the finger or shaking the fist, or any other unseemly demonstrations toward the prisoner, are entirely out of place, and should be promptly corrected by the trial Judge. We do not mean to say that all of these things happened in this case. It only appears that the District Attorney made statements of his own knowledge, and we only refer to these other reprehensible practices because we are aware of their existence, and feel that they should be corrected by the trial Judge.

For the error in the charge referred to, the case must be reversed and remanded for a new trial.