THE STATE OF CONNECTICUT *vs.* DOMINICK SANTELLO.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 4th—decided November 5th, 1935.

*Louis Feinmark,* with whom was *Israel J. Jacobs,* and, on the brief, *James D. Clyne,* for the appellant (defendant).

*William H. Comley,* State's Attorney, with whom, on the brief, was *John V. Donnelly,* special attorney for the State, for the appellee (the State).

HINMAN, J. On the night of Saturday, November 10th, 1934, a number of young men were engaged in playing games in premises occupied by a club called the Red Wing Athletic Club on the ground floor of a building at the corner of Ely Avenue and Knapp Street in Norwalk. Shortly after midnight two men entered the rooms, one wearing a black mask and carrying two revolvers, and the other having upon his face a white silk muffler and carrying a sawed-off shotgun. The man in the black mask, holding a revolver in each hand and menacing the men who were in the front room, forced them to move through a doorway into a rear room. The other man, holding the shotgun, followed him. In the doorway a scuffle ensued between the man in the black mask and one of the

young men in the back room, and the man with the shotgun thereupon shot and killed Patsy DeLuca, who was in the front room and had not immediately put up his hands as commanded.

Upon the trial the State offered evidence to prove and claimed to have proved that the man who fired the shot was the defendant, Dominick Santello, and the other man was John Mazello; that they and Cosmo (generally known as Gus) Scarpello, had been together on Thursday and Friday nights and had discussed and planned certain hold-ups, including this club; that pursuant to a plan already made and agreed to between them they met Saturday night and came to the vicinity of the club in an automobile owned and driven by Scarpello, bringing with them the two revolvers and shotgun, furnished by the defendant, their purpose being to hold up and rob members of the club whom they expected to find assembled at the time; that shortly after midnight Mazello and Santello left Scarpello in the car and proceeded to the club, Scarpello then driving past the building and parking his car a short distance away on Knapp Street ready to receive the other two on their return; that after the occurrences in the club above related culminating in the shooting of DeLuca, Mazello and Santello retreated from the club rooms, rejoined Scarpello and were driven away by him in his car; that both the defendant, who resided in Norwalk with his family, and Mazello then left the city, and the defendant remained absent until arrested in Bridgeport a week later.

The defendant offered evidence and claimed to have proved that he was at home on Thursday and Friday nights, and on Saturday evening left home at about 9.30, went to New Haven and was there at the time of the shooting, and claimed that Scarpello either did

the actual killing himself or was associated therein with other persons and not with the accused. His further claim was that his leaving and absence from home was through fear that he might be taken into custody and returned to jail for failure to pay the balance of a fine imposed by the City Court of New Haven some time previous.

The trial resulted in a verdict of guilty of murder in the first degree. The defendant appealed from the denial of his motions to set aside the verdict and in arrest of judgment, and subsequently filed an additional appeal under which error was assigned in refusing to grant certain requests to charge, in the charge, and in rulings made in the course of the trial. As we find one of the latter decisive we proceed to it immediately.

The finding discloses that during the cross-examination of Scarpello, who was called as a witness by the State, the following occurred; Counsel for the accused asked: "Q. Now, by the way, you have told us that you haven't received any promises or inducements for your testimony here. You have never been indicted by the Grand Jury, have you? A. No. Q. And you know you are not going to be, don't you? In return for your testimony? A. I don't know. Q. You don't know? A. I don't know anything. Q. Do you read the newspapers, sir? A. How can I get newspapers in jail? Q. Do you read them? A. I haven't seen a newspaper since I have been in jail. Q. You haven't seen the Norwalk papers? A. I haven't seen them, no. Q. You didn't see the Norfolk paper of January 11, in which it sets forth"—Mr. Comley: "Now I object to any reading from the Norwalk newspapers, Your Honor. If there is any privilege of exemption to be given to this man it comes from me, not from any reporter of the Norwalk newspapers. I can only say

that no such promise has been made." Counsel for the defendant thereupon objected to this declaration by the state's attorney and asked to have the jury excused while he argued a motion. The state's attorney responded that he felt the conduct of counsel to be improper and that he was warranted in protecting himself from the insinuation. The jury was excused and counsel for the defendant made and argued a motion for a mistrial on the ground that the statement made by the state's attorney constituted evidence which would influence the jury to the prejudice of the defendant. The court denied the motion, recalled the jury, and the trial proceeded without, so far as the record shows, any further reference to the incident or instruction to the jury to disregard the statement in question. The denial of this motion is assigned as error.

A well established rule is that a statement by counsel, not under oath, of a material fact pertinent to the issues unsupported by evidence, and prejudicial to the opposing party, constitutes reversible error unless it appears that the prejudicial effect has been effectively averted by an instruction to disregard the statement, or otherwise. 2 R. C. L. pp. 435, 437; 64 C. J. p. 264; *Lowdon* v. *United States,* 149 Fed. 673, 677. It must, of course, be an unsworn assertion on counsel's own authority of the existence of the fact, as distinguished from an appeal to the jury's recollection of the evidence or inferences claimed therefrom. *Keefe* v. *Sullivan County Railroad,* 78 N. H. 139, 97 Atl. 565; *Kambour* v. *Boston & Maine Railroad,* 77 N. H. 33, 86 Atl. 624. Such a statement, although technically improper, will afford ground for reversal only when of a material fact of potential prejudice to a party and seasonably objected to. *State v. Leopold,* 110 Conn. 55, 59, 147 Atl. 118. In determin-

ing as to the probable effect, the nature and materiality of the stated fact and the facts and surroundings of the particular case are to be regarded; under certain circumstances such a statement might be highly prejudicial, but under others not so regarded. *Silver* v. *State*, 110 Tex. Cr. App. 512, 521, 8 S. W. (2d) 144, 60 A. L. R. 290. It is common knowledge that trials are often facilitated by statements of fact, especially those which are relatively unimportant, made by counsel, and accepted as such by express or tacit agreement. General statements not actually supported by evidence may be so made, in the heat of debate or argument, without protest or objection at the time serving to especially emphasize or call them to the attention of the jury, as to nullify any prejudice which might otherwise arise therefrom. *State* v. *Leopold,* supra. *Hoxie* v. *Home Ins. Co.,* 33 Conn. 471, 475; *Combs* v. *State,* 75 Ind. 215, 220. In many cases appropriately pointed directions to the jury to disregard the statement may operate to so withdraw it from their consideration as to obviate prejudicial effect. In others, the injurious effect is such that it cannot be neutralized by instructions to disregard. *People* v. *Mull,* 167 N. Y. 247, 255, 60 N. E. 629, 632, L.R.A. 1918D, p. 35. It is the duty of the appellate court to weigh the probable effect of the statement upon the issues of the case, then look to the action of the trial court in dealing with it, and if it is reasonably clear that the effect has not been eliminated, reversal is required. *Kansas City Southern Ry. Co.* v. *Murphy,* 74 Ark. 256, 259, 85 S. W. 428; *People* v. *Pantages,* 292 Pac. (Cal.) 500.

The situation in the present case as revealed by the record, including all of the evidence, which is before us under the appeal from the verdict and by reference made part of the finding for the purposes of the

assignment now under discussion, was such as to render the fact asserted by the statement in question more material and its probable effect more potent than the incident, above quoted, might indicate when considered by itself. Proof of the identity of Santello as a participant in the attempted robbery in the course of which the homicide was committed depended entirely on the testimony of Scarpello, aside from such corroboration as was afforded by testimony of a police officer that Santello and another man were with Scarpello in the latter's car on the Thursday night preceding, and the conduct of Santello in absenting himself from Norwalk after the homicide. The State frankly concedes in its brief that Scarpello was shown, on the State's own evidence, "to be a worthless scamp and a cringing coward," that reliance upon his confessions after being taken into custody and his testimony on the stand "could not be based on any estimate of his probity or integrity," and that it might be assumed that his course would be such as would best serve his interest in the trouble in which he found himself.

He was cross-examined at great length as to the details related by him on the witness stand but it is apparent from the record of the cross-examination that defendant's counsel placed much reliance upon an intended claim that in testifying as he did he was motivated by an expectation of clemency in the consequences of his own part in the affair which, he steadfastly maintained, did not include his personal presence in the club rooms at any time. He was repeatedly inquired of as to whether he had received any promise of immunity or clemency, and although he consistently replied in the negative it yet remained open to the defendant to claim that in these denials Scarpello was not worthy of credit and that in testi-

fying as he did he was actuated by some such inducement. The inquiries which elicited the declaration complained of were obviously another attempt to secure an admission of the existence of such an inducement. The attempted resort to a newspaper statement was flagrantly inadmissible, merited the indignation with which the objection was interposed, and the impulse which prompted the state's attorney to repudiate the insinuation which the inquiry involved is readily understandable. However, the effect and consequences of the statement are not rectified by the fact that it was made impulsively, without deliberation or wrongful purpose, and upon provocation which, the record suggests, was by no means limited to the specific incident which we have quoted. The consequence of this positive declaration that no promise had been made is obvious. "That solemn statements of fact, . . . as of the counsel's own knowledge, are likely to have weight with juries, cannot be doubted. The respectability and standing of counsel only serve to enhance the peril." *Gutzman* v. *Clancy,* 114 Wis. 589, 597, 90 N. W. 1081; *State* v. *Ferrone,* 96 Conn. 160, 168, 113 Atl. 452. The prestige and confidence justly pertaining to the office of the state's attorney and his personal reputation for conscientious probity and fairness gave it a finality which decisively put an end to attack upon the credit of Scarpello based upon any promise or assurance of exemption from prosecution, or similar concession. The resulting disadvantage to the defendant is obvious. As no admonition to disregard the statement was given by the trial court, either at the time or in the charge there is no need to consider whether the harmful result could have been so obviated or remedied that reversible error could have been averted.

Most of the reported cases involving the rule we

are considering have concerned statements made in argument instead of in the course of the taking of evidence, but no reason for a distinction is discernible. Indeed it would seem that an evidential statement made under the latter circumstances is more likely to be impressed upon and given effect by the jury than one incidentally included in argument. This it appears would be especially true when, as here, its importance is emphasized not only by objection but by the excusing of the jury for the declared purpose of argument of a motion based upon it and a resumption of the trial without further reference to it, from which an inference of propriety might be drawn. *State* v. *Ferrone,* supra, p. 163. "While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence." Op. Cit., p. 169. Where it appears that the verdict has been influenced thereby it should be set aside. *Worden* v. *Gore-Meenan Co.,* 83 Conn. 642, 652, 78 Atl. 422; *Hennessy* v. *Metropolitan Life Ins. Co.,* 74 Conn. 699, 710, 52 Atl. 490; *Hoxie* v. *Home Ins. Co.,* supra. While the necessity or occasion for a mistrial for this cause rests primarily with the trial court (*State* v. *Laudano,* 74 Conn. 638, 646, 51 Atl. 860), the exercise of its discretion is reviewable, and subject to reversal on appeal when the probable effect of the statement complained of is as apparent as it becomes upon a deliberate and comprehensive survey of the entire situation in the present case. *DeLucia* v. *Kneeland,* 108 Conn. 191, 142 Atl. 742; *State* v. *Buxton,* 79 Conn. 477, 65 Atl. 957.

Of the many cases in other jurisdictions the facts in the following are most nearly analogous. In *Looney* v. *The People,* 81 Ill. App. 370, 376, the state's

attorney announced upon a witness (Cox) taking the stand that "no inducements had been held out" to him and Lahiff, another witness later called, "nor any promise of clemency by the State," and that "if they took the stand they did so voluntarily and without any understanding whatever with the State." No exception was saved to the statement, but the court said (p. 376): "The remarks of the state's attorney were improper and contained matter which could lawfully be shown the jury only by testimony from the witness stand, under oath and subject to cross-examination. Its natural effect would be to prepare the minds of the jury for a favorable reception of the testimony of Lahiff and Cox." In *Hall* v. *State,* 115 Tex. Cr. App. 548, 27 S. W. (2d) 187, the State used as a witness one of the several parties who acted together in the commission of the burglary which was in progress when the homicide was committed and that witness testified that he had not been promised immunity and that he did not know whether or not he would be prosecuted. In his argument the prosecuting attorney said: "I know that [this witness] was not lying when he said that no one had promised him immunity for testifying against the defendant in this case; because I am the only man who could make him such a promise, and I know that I have not done it." This statement was held to constitute a ground for reversal. See also *Walker* v. *State,* 84 Tex. Cr. App. 136, 206 S. W. 96, in which the prosecuting officer stated to the jury the result of a prior prosecution in which the facts were similar.

In *Boswell* v. *State,* 93 Tex. Cr. App. 641, 248 S. W. 360, two persons who were accomplices in the crime charged were used as witnesses for the State and their testimony was damaging to the appellant. In his argument to the jury appellant's attorney asserted

that they hoped to obtain clemency and that he believed they had been promised immunity. In his closing argument the prosecutor stated: "I have made no promise of immunity and no promises have been made by anyone." This was objected to by the appellant and on appeal it was held that the objection should have been sustained. "The statement of the attorney for the State was not in argumentative form, nor does same appear to have been a discussion of the testimony of any witness, but to be a direct statement of a fact by said attorney, which fact was material and might easily have been harmful to the appellant. . . . The unsworn statement by state's counsel to the jury of a material fact adverse to the defendant which was not in testimony, will require reversal of the case." In *Martin* v. *State,* 63 Miss. 505, a conviction was reversed because counsel for the prosecution stated to the jury that the defendant "is a man of bad, dangerous, and desperate character," no evidence of his general character having been introduced. It was said (p. 507): "This was an assumption or declaration of facts . . . made by counsel without being sworn or examined as a witness, and of a nature well calculated to influence the jury. . . . Such declarations uttered by distinguished counsel, of high moral and social standing, in any case, would inevitably tend to prejudice the jury against the prisoner."

In *Knapp* v. *Stone,* 79 N. H. 32, 103 Atl. 1005, a plaintiff's verdict was set aside because his counsel declared in argument, in answer to what was considered an insinuation by opposing counsel, "I am the only counsel in this case, and I can say to you, gentlemen, in answer to my brother's argument that I have not . . . told [the plaintiff] how to make up his story, or how to swear to it." See also *Story* v. *Concord &*

*Montreal Railroad,* 70 N. H. 364, 49 Atl. 93. In *State*
v. *Greenleaf,* 71 N. H. 606, 617, 54 Atl. 88, the attor-
ney for the state asserted in argument that the state-
ment of a witness who had testified was taken the
next day after the affair happened, when there was
no evidence that the witness had ever given a state-
ment before he testified on the stand. In *Rickards* v.
*State,* 129 Md. 184, 191, 98 Atl. 525, it was held that
a statement by the prosecutor in argument, regarding
a witness who had testified that he had voluntarily
tendered himself, that "the State had made no bar-
gain" with him, ought to have been eliminated. The
same principle was involved and applied in *Mitchum*
v. *State,* 11 Ga. 615, 630; *Taliaferro* v. *United States,*
47 Fed. (2d) 699; *Hamilton* v. *State,* 97 Tenn. 452, 37
S. W. 194, 195; *State* v. *McGahan,* 48 W. Va. 438, 37
S. E. 573; *Commonwealth* v. *Shoemaker,* 240 Pa. St.
255, 87 Atl. 684; *Clark* v. *Ulrich,* 153 Mich. 695, 117
N. W. 329; *Supreme Lodge Mystic Workers* v. *Jones,*
113 Ill. App. 241; *St. Louis, I. M. & S. Ry. Co.* v.
*Hairston,* 125 Ark. 314, 188 S. W. 888; *Hall* v. *Jones,*
129 Ark. 18, 26, 195 S. W. 399; *Combs* v. *State,* 75 Ind.
215, 220; *People* v. *Pantages,* 292 Pac. (Cal.) 500;
*Alabama Iron & Fuel Co.* v. *Benenante,* 11 Ala. App.
644, 66 So. 492; *State* v. *Heaton,* 149 Wash. 452, 211
Pac. 89. See also note, L. R. A. 1918D, p. 24 et seq.,
and cases cited.

As we hold that the denial of the motion for a mis-
trial was error requiring us to order a new trial, there
is no occasion to determine the assignments relating
to the motions to set aside the verdict and in arrest
of judgment. The defendant made requests to charge
which it appears, although not as clearly as would
have been desirable, were designed to secure an in-
struction to the effect that even if he failed to prove
the alibi upon which he relied, the evidence in sup-

port of it should be considered along with the other evidence in the case in determining whether the State had proved its case beyond any reasonable doubt. The court charged that "if upon a full consideration of the entire evidence a reasonable doubt arises as to the presence of the accused at the scene of the crime, it is your duty to acquit such accused, even though you are not satisfied that he was elsewhere." It is claimed that, under this instruction the jury might lose sight of the fact that the evidence in support of the alibi was to be considered, together with all the other evidence, upon the question of reasonable doubt. Here, as in *State* v. *Brauneis,* 84 Conn. 222, 232, 79 Atl. 70, we think that the defendant was entitled to have the jury specifically so instructed. Although the defendant, disclaiming as he did any knowledge of the killing, made no dispute as to the manner thereof, it was incumbent upon the State to show the circumstances, and the sweater, worn by the decedent and through which the fatal shot passed, was relevant and its admission as an exhibit, over defendant's objection, was not erroneous. None of the other assignments which pertain to matters likely to be duplicated on another trial develop error or occasion for present discussion.

There is error and a new trial is ordered.

In this opinion the other judges concurred.