STATE OF CONNECTICUT *v.* ROSARIO CAMERONE
(3500)

Argued May 7—decision released July 29, 1986

*Kent Drager,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Susan C. Marks,* deputy assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, *Thomas O'Keefe,* assistant state's attorney, and *Barbara Farrell,* law student intern, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of his conviction, after a jury trial, of three counts of aiding the sale of narcotics in violation of General Statutes §§ 21a-277 (a) and 53a-8. The dispositive issue is whether it was error for the trial judge, during cross-examination of the state's key witness, to comment on facts within his personal knowledge and outside the record as to whether a witness had been offered a "deal" in exchange for his testimony, and on whether the prosecutor had the ability to offer the witness promises in exchange for his testimony. We find error.

Because the defendant did not properly raise this claim in the trial court, he seeks review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). The determinative issue in granting an *Evans* review is whether "the record adequately supports a claim that [the defendant] has clearly been deprived of a fundamental constitutional right and a fair trial." *State* v. *Liebowitz,* 7 Conn. App. 403, 404, 509 A.2d 43 (1986), citing *State* v. *Evans,* supra, 70. The defendant's claim of a violation of a constellation of constitutional rights does raise an issue of fundamental constitutional dimension. For purposes of an *Evans* review, "it is also necessary that the record *'adequately* supports [the] claim.' "

(Emphasis in original.) *State* v. *Liebowitz, supra,* 405. The record in this case adequately supports the defendant's constitutional claim.

The state's case against the defendant was that he supplied cocaine to William Deitch, who sold it to undercover officer Gary Hunt of the New Haven police department. Deitch testified that on May 5, May 12 and May 26, 1983, he sold cocaine to Hunt, and that on each of these occasions the defendant supplied the cocaine to him. Hunt testified that the three transactions took place. He did not, however, have any personal knowledge that the defendant supplied the cocaine to Deitch.

During the period of the transactions, both the defendant and Deitch were under surveillance by members of the New Haven police department. Detective Sergeant Carl Giannotti, a member of the surveillance team, testified that he observed the defendant and Deitch meeting prior to each drug transaction. None of the surveillance officers, however, observed an exchange of drugs or money between the defendant and Deitch.

The defendant testified on his own behalf and denied supplying cocaine or any other drug to Deitch. He testified that he had purchased an automobile from Deitch and that Deitch had been dunning him to pay the money still owed on the car. While the defendant did not recall meeting with Deitch on May 5 or May 12, 1983, he did remember meeting with him on May 26, 1983, to discuss the money still owed on the car. Thus, the only evidence presented at trial which directly linked the defendant with the three drug transactions was Deitch's testimony that the defendant was his supplier on each of the three occasions. Consequently, the credibility of Deitch was crucial.

Deitch testified on direct examination that he had pleaded guilty to certain unspecified charges arising

out of the narcotics transactions, that he was await-
ing sentencing on these charges, that no promises had
been made to him other than that his testimony would
be taken into consideration by the sentencing judge,
and that he was testifying in the hope that it would help
him. On cross-examination, the defendant sought to
impeach Deitch's credibility based on his motive and
interest in testifying against the defendant, namely,
that his testimony was motivated by a desire for
leniency in connection with the charges pending against
him. Deitch revealed that he had pleaded guilty to sev-
eral charges of selling cocaine and possession of mari-
huana with intent to sell, and that he was facing a
potential maximum sentence of sixty-seven years.
Thereafter, the following colloquy occurred between
the defense counsel and Deitch:

"Q. And I believe the prosecution—I'm not sure
whether the prosecution stated it or whether you told
the prosecution. You told the prosecution that you were
aware that if you testified satisfactorily to the prose-
cution in this trial, that it would affect your sentence.

A. No promises were made to me.

Q. No promises, but did they say it's a possibility?

A. No promises were made to me.

Q. No promises?

A. Nothing at all.

Q. Then why are you here?"

At this point, the state objected to the defense coun-
sel's characterization of Deitch's testimony, stating: "I
object to this line of questioning. That is completely
his representation of what the agreement is for this
man's testimony. I have no control over his sentence.
It doesn't have to satisfy me at all."

After agreeing that the question of the defense counsel was "somewhat of a misrepresentation," the trial court stated the following: "I think we ought to clarify it for the purpose of the jury. The state has no control over the sentence of this individual. *Indeed, I took the plea and I am the sentencing judge. The state has no control over any of the sentences, nor is there any deal for the sentence.* The sentence is completely discretionary and up to myself." (Emphasis added.) Shortly thereafter, the court stated, "[t]he point I was making for the record and for the clarification of the jury *is that the State can't promise [the witness] anything. The state cannot make it any better for him.*" (Emphasis added.)

The defendant claims that the trial court, by its statements, violated a cluster of interconnected fundamental rights, principally his state[1] and federal right to confront the witnesses against him, and his due process right to a fair trial.[2] We agree.

I

The defendant claims that his right of confrontation was violated because the trial court's comments effectively foreclosed three areas of potential cross-examination of the state's key witness.[3] First, the

---

[1] Although the defendant relies on both the sixth and fourteenth amendments to the United States constitution and article first, §§ 8 and 19, of the Connecticut constitution, he offers no separate analysis of the Connecticut constitution, as a basis for disparate treatment between the two. We see no reason to undertake such an analysis. See *State* v. *Cosby*, 6 Conn. App. 164, 166 n.1, 504 A.2d 1071 (1986).

[2] The defendant claims that an aspect of the right to trial by jury is the right to have issues of fact and credibility determined by the jury. This right, however, has been viewed as a component of the right to a fair trial; *State* v. *Hines*, 187 Conn. 199, 209, 445 A.2d 314 (1982); and thus does not in this case require separate analysis under the rubric of the right to trial by jury.

[3] The defendant in his brief concedes, and we agree, that if the trial judge had confined his statements to the initial legal point that it is the judge

defendant claims that the statement that there was no deal between the state and the witness as to his pending sentence, based on the trial judge's personal knowledge outside the record, had the effect of unduly restricting the defendant's cross-examination of the witness in two areas of motive testimony: whether in fact a deal had been made; and whether the witness believed that, by testifying, he would be benefitted. Second, the defendant claims that the court's statement that the prosecution could not promise the witness anything with respect to his upcoming sentencing was legally incorrect and foreclosed defense inquiry into whether the prosecution had made any assurances in this regard. We conclude that the defendant's right of confrontation was not violated with regard to the first two areas of motive testimony. We agree with the defendant, however, that his right of confrontation was violated by the trial court's comments regarding whether the prosecution could promise him anything about his sentence.

" 'Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . . The sixth amendment to the constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." . . . To comport with the constitutional standards embodied in the confrontation clause the defendant in exercising his right of cross-examination must be allowed to "expose to the jury the facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witnesses." *Davis*

---

and not the prosecutor who determines an individual's sentence, there would be no error. It is permissible to inform the jury that the judge, not the state's attorney, imposes the sentence; otherwise the jury might think that a particular suggested deal between the prosecutor and witness was even better than it was. *United States* v. *Rosson,* 441 F.2d 242, 244 (5th Cir. 1971); see *State* v. *Mendill,* 141 Conn. 360, 363, 106 A.2d 178 (1954).

v. *Alaska,* 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974).' " (Citations omitted.) *State* v. *Privitera,* 1 Conn. App. 709, 711–12, 476 A.2d 605 (1984), quoting *State* v. *Wilson,* 188 Conn. 715, 720, 453 A.2d 765 (1982).

Cross-examination as to bias or motive is constitutionally protected. *State* v. *Cosby,* 6 Conn. App. 164, 167, 504 A.2d 1071 (1986). In a case where the only direct evidence linking the defendant with criminal activity is the testimony of an accomplice who has already pleaded guilty to charges and is awaiting sentencing, it is especially important that a defendant be permitted to search for an agreement between the state and the witness. Under these circumstances "it might be assumed that the [witness'] course would be such as would best serve his interest in the trouble in which he found himself." *State* v. *Santello,* 120 Conn. 486, 492, 181 A. 335 (1935). Even in the absence of an actual deal, such a witness may be motivated to testify by a desire to please the prosecution in an attempt to procure lenient treatment. *United States* v. *Mayer,* 556 F.2d 245, 248–49 (5th Cir. 1977). Thus, whether or not an actual agreement has been worked out, a witness may be cross-examined to show a belief or expectation of favorable treatment by the state.

The trial court's comments, when examined in the context of the extensive cross-examination of Deitch, did not foreclose inquiry into these two areas. Our review of the entire cross-examination discloses that the defendant was afforded an adequate opportunity to inquire into the fact of whether a deal had been arranged with respect to Deitch's sentence, and into Deitch's motive for testifying. The defendant questioned Deitch on several occasions, both before and after the trial court's comments, on whether he had received any promises or been offered any deals. He also questioned Deitch on his motive for testifying. On

at least two occasions, the defendant elicited from Deitch the statement that he hoped and believed that his testimony might help him at sentencing. Additionally, the court in its charge instructed the jury that they should consider the witness' motive for testifying in assessing his credibility.[4] Thus, this aspect of the defendant's claim that he was not permitted cross-examination sufficient to satisfy the sixth amendment fails.

The defendant was, however, effectively foreclosed from inquiring into the witness' motive for testifying based on a prosecutorial, as opposed to a judicial, promise or assurance. This foreclosure arose from the court's statement that the prosecution could not promise anything to the witness. As a statement of law, albeit incorrect; see text infra; the defendant could only perceive this as a ruling forbidding inquiry into this area. The court's statement was correct in the sense that the state cannot promise a witness a specific sentence in exchange for his testimony. The state can, however, make promises or assurances with respect to the position it will take at sentencing. Practice Book §§ 921, 922; see *Szarwak* v. *Warden,* 167 Conn. 10, 18, 355 A.2d 49 (1974). For example, the prosecution can promise to recommend a lenient sentence in exchange for a witness' testimony against a defendant. It can promise that it will, moreover, try to persuade the court to accept its recommendation of leniency, so that future similar promises to other persons will carry some credibility with them. The defendant was entitled to ask Deitch whether his hope for leniency from the court had been bolstered by assurances from the state that it would attempt to persuade the court to realize his

---

[4] The court charged as follows: "If you feel that he may, in his own mind, be looking for or hoping for some favors in the handling of his own situation and, therefore, his testimony may be colored because of such thoughts, then, of course, you will give such weight to his testimony or no weight to it at all as may appear appropriate to you under all the circumstances."

hope. Because the defendant was effectively precluded from cross-examination in this area, and the jury may have thus been deprived of facts from which it could appropriately draw inferences concerning Deitch's reliability, we conclude that the defendant was denied his constitutional right of confrontation.

## II

The defendant also claims that the trial court's comments violated his due process right to a fair trial. There are two interrelated aspects to this claim. First, he claims that the trial court's comment before the jury on a material fact, adverse to the defendant and based on the judge's personal knowledge, crossed the line of judicially permissible conduct, and had the unintended effect of improperly bolstering Deitch's credibility by corroborating his testimony. Closely related to this is the defendant's claim that the statement had the effect of improperly restricting the jury's consideration of Deitch's credibility, thus undermining the defendant's constitutional right to have all facts and issues of credibility determined by the jury. We agree.

Due process requires that "there should be no questioning that appears to reject a defendant's credibility and implies judicial support of a prosecution witness' testimony. . . . ' "The influence of the trial judge on the jury is necessarily and properly of great weight," *Starr* v. *United States,* 153 U.S. 614, 626 [14 S. Ct. 919, 38 L. Ed. 841 (1894)], and jurors are ever watchful of the words that fall from him.' See *Bollenbach* v. *United States,* 326 U.S. 607, 612, 66 S. Ct. 402, 90 L. Ed. 350 (1946). These admonitions and cautions 'are prompted by the truism that a jury has a natural tendency to look to the trial judge for guidance, and may find it even where it is not intended.' " *State* v. *Fernandez,* 198 Conn. 1, 12, 501 A.2d 1195 (1985).

In *State* v. *Fernandez,* supra, the court held that the defendant was deprived of his right to a fair trial by

the trial judge's "partisan" cross-examination of the only witness for the defense concerning his statement to the judge on a plea of guilty canvass. The court noted that whether a defendant's right to a fair trial has been violated must be determined on a "case by case basis." Id., 15. The facts found significant in *Fernandez* are remarkably similar to the present case. The key witness who was cross-examined by the trial judge during the state's cross-examination of him was a joint participant in the criminal activities for which the defendant was on trial. He had already pleaded guilty to charges arising from the crimes and was awaiting sentencing. The witness' credibility was a key issue in the case because if the jury chose to believe him, they could not consistently convict the defendant of the crimes charged. The judge who took the witness' guilty plea was the same judge who was presiding at the defendant's trial. The trial judge referred to the earlier plea session with the witness, albeit not on the basis of personal knowledge but rather by cross-examining him based on a copy of the plea transcript.

The court in *Fernandez* found error in the defendant's convictions. The court noted that the credibility of the witness was directly implicated by the trial court's conduct, and that the defense theory of the case, dependent as it was on the jury's acceptance of the witness' testimony, "could not escape the tremor emanating from that examination by the trial judge." Id., 15.

It is the combination of the jury's tendency to view the trial judge as its guiding light and the trial judge's conduct which may have been interpreted by the jury as an evaluation of Deitch's credibility, that created the error in this situation. By stating to the jury that he was the judge who took the witness' guilty plea and, further, based on his own personal knowledge, that there was in fact no deal made between the witness and prosecution with respect to the witness' testimony,

the trial judge, as the state concedes, in effect bolstered the credibility of Deitch by judicially corroborating facts to which Deitch had already testified. It is likely that this inadvertently conveyed to the jury an impression that the judge was of the opinion that Deitch was telling the truth in his defense against the defendant's attack on his credibility. This seriously undermined the defendant's theory of defense which was, very simply, that Deitch was lying when he implicated the defendant as his supplier of cocaine and that he was doing so in order to help himself in his own pending cases.

The defendant also claims that the trial court's statements transcended the bounds of legitimate comment so as effectively to preclude the independent determination of questions of fact and credibility which the defendant is entitled to have the jury make. More specifically, the defendant argues that the trial court, by its comments, took the determination of the witness' credibility from the jury on the issues of whether in fact there was a deal for the witness' testimony and whether the state had made any promises to the witness. We agree.

The jurors are the "sole triers of fact and credibility." *Davis* v. *Alaska,* supra, 318. "[L]itigants have a constitutional right to have issues of fact decided by the jury and not by the court." *State* v. *Hines,* 187 Conn. 199, 210, 445 A.2d 314 (1982), quoting *Ardoline* v. *Keegan,* 140 Conn. 552, 555, 102 A.2d 352 (1954). "They are free to reject even uncontradicted testimony, if they do not find it credible . . . particularly in a criminal case." *State* v. *Dudla,* 190 Conn. 1, 7, 458 A.2d 682 (1983).

In *State* v. *Santello,* supra, a case involving facts very close to those in this case, our Supreme Court was faced with a similar claim. The defendant was charged with and convicted of murder. The evidence at trial revealed

that two masked and armed men entered a club and, after a scuffle ensued, a person was shot and killed. The defendant denied any participation in the incident, claiming to have been at home when it took place. The state's key witness, Cosmo Scarpello, was a participant in the crime and testified that the defendant was present during the incident. Proof of the defendant's identity as a participant depended entirely on Scarpello's testimony. Id., 492. The defense counsel placed great reliance upon an intended claim that Scarpello was motivated to testify as he did by a hope or promise of leniency or clemency as to his own participation. Id., 492–93. The defense counsel repeatedly cross-examined Scarpello as to whether he had received promises of immunity or clemency and, upon an attempt to read from a newspaper statement containing information contradicting the witness' negative responses, the state's attorney made the following objection: "Now I object to any reading from the Norwalk newspapers, Your Honor. If there is any privilege of exemption to be given to this man it comes from me, not from any reporter of the Norwalk newspapers. *I can only say that no such promise has been made."* (Emphasis added.) Id., 489–90.

The court held that this statement by counsel, not under oath, of a material fact pertinent to the issues, unsupported by the evidence, and prejudicial to the defendant without a cautionary instruction, constituted reversible error. Id., 490. The court noted that, despite Scarpello's testimony that no deals had been made, "it yet remained open to the defendant to claim that in these denials Scarpello was not worthy of credit and that in testifying as he did he was actuated by some such inducement." Id., 492–93. The court noted further that the effect on the jury of a statement by the state's attorney, because of the prestige and confidence pertaining to his office, gave the statement "a finality

which decisively put an end to attack upon the credit of [the state's key witness] based upon any promise or assurance of exemption from prosecution, or similar concession." Id., 493. In effect, the determination of the witness' credibility with respect to his testimony on this fact was taken from the jury by the state's attorney's comment.

When a statement corroborating a witness' testimony comes from the trial judge, as it did in this case, the influence on the jury is even greater. " 'The respectability and standing of [the trial judge] only serve to enhance the peril.' " (Citations omitted.) Id.; see *State* v. *Fernandez,* supra. A juror will be inclined to take the judicially corroborated fact as conclusively true. Since the defendant was entitled to have the jury determine Deitch's credibility and to disbelieve his statement that there was no deal; *State* v. *Santello,* supra; the trial court's flat assertion corroborating the testimony violated the defendant's right to a fair trial.

### III

The state argues that if error is found, it is nonetheless harmless. Our cases hold that when error is of constitutional dimension it is reversible unless the state proves the error harmless beyond a reasonable doubt. *State* v. *Mebane,* 8 Conn. App. 63, 69, 511 A.2d 359 (1986). In this case, the state has not sustained its burden. This is not a situation where "the evidence against the accused is so overwhelming that we can conclude as a matter of law that the jury's verdict was not influenced [by the trial court's comment]." *State* v. *Cohane,* 193 Conn. 474, 485, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984). On the contrary, the only direct evidence linking the defendant to the criminal activities with which he was charged was the testimony of the state's key witness, and it is precisely this testimony which was supported by the trial court's statements.

The statements had a multifaceted impact on the jury's assessment of Deitch's credibility. On the one hand, the jury was prevented from hearing evidence which they had a right to hear concerning his motive to testify which might have impacted on their assessment of his credibility. On the other hand, they were presented with a statement by the trial court based on personal knowledge which corroborated his testimony and which they should not properly have considered in evaluating his credibility. Moreover, they were directed by the court, during both cross-examination of the witness and during the jury charge, to find that there was in fact no deal worked out for the testimony of the witness, thus bolstering his credibility. In this case, we are not persuaded beyond a reasonable doubt that the standard instruction to the jury that they are the sole judges of credibility rendered the error harmless.

Our resolution of this claim of the defendant is dispositive. Although he raises other claims of error of an evidentiary nature, it is not clear that they will recur in the new trial. We therefore decline to review them.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.