STATE OF CONNECTICUT *v.* JOSE CINTRON
(6762)

DUPONT, C. J., O'CONNELL and LAVERY, Js.

Argued December 6, 1989—decision released March 13, 1990

*William R. Schipul,* assistant public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Gary Nicholson,* assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of conviction, after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3) and possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a). The defendant claims that the trial court erred (1) in making factual determinations that prevented the defendant from effectively attacking the credibility of the

state's key witness, and (2) in refusing to give the jury a missing witness instruction. We find no error.

The jury could reasonably have found the following facts. On the evening of April 17, 1987, Bridgeport police officers responded to a report of a robbery. Upon their arrival at the scene, the officers found the victim standing on the sidewalk. As the victim was being interviewed, the defendant drove by. The victim pointed out the defendant as the man who had robbed her, whereupon the officers pursued him in their marked patrol car.

The police followed the defendant as he continued down the street and made a left turn. The defendant made three more turns and drove a short distance further before he realized he was being followed. He then pulled over to the side of the road and stopped. The officers had noticed that while they were following the defendant, he leaned over to his right several times and disappeared from view. With their guns drawn, they approached the defendant's car and ordered him not to move. One of the officers noticed that the passenger door was open and on the ground under the door were two pieces of jewelry and several packets, later found to contain narcotics. Similar packets were later found in the defendant's vehicle.

The victim testified that the jewelry found by the officers had been taken from her by the defendant while she was in his apartment earlier that evening. She further testified that when she arrived at his apartment, she and the defendant became embroiled in an argument centering on her unwillingness to continue her relationship with the defendant because of his drug dealing. During the dispute, the defendant threatened the victim with an axe or machete, and when she tried to leave, he seized the jewelry that she was wearing.

The victim offered inconsistent testimony as to who, if anyone, witnessed the argument and the taking of the jewelry. She also testified that she had seen, in the defendant's apartment, packets similar to those discovered by the police and that she had sold drugs for the defendant on several previous occasions.

The defendant offered a different version of the events. He claimed that he had given the jewelry to the victim for her birthday and demanded its return when he noticed that she was no longer wearing a watch he had given her. He feared that she was going to sell the jewelry in order to buy drugs, and he claimed that she voluntarily surrendered the jewelry when he asked for it. He denied ever threatening her with a machete or axe. In regard to the drugs found near his car, the defendant testified that the victim had borrowed his car that day, and he suspected that the drugs belonged to her.

I

The defendant first claims that certain comments by the trial court deprived him of his due process rights to a fair trial. See U.S. Const., amend. XIV; Conn. Const., art. I, § 8.[1] These comments, the defendant asserts, amounted to factual determinations that improperly invaded the province of the jury and prevented the defendant from attacking the credibility of the state's key witness, the victim.

It is elementary jurisprudence that a judge, especially in a criminal case, must strive to conduct a trial in as close to an " ' "atmosphere of perfect impartiality" ' " as possible. *Fair* v. *Warden,* 211 Conn. 398, 413, 559

---

[1] The defendant relies on both the federal and state constitutional guarantees of due process. He has not, however, undertaken a separate analysis of the state constitution as a basis for different treatment of his federal and state constitutional claims. We will not undertake such an analysis. *State* v. *Blackwell,* 20 Conn. App. 193, 199 n.4, 565 A.2d 549 (1989).

A.2d 1094, cert. denied,    U.S.    , 110 S. Ct. 512, 107 L. Ed. 2d (1989). A judge must be careful to avoid any indication of bias, particularly in front of the jury. *State* v. *Delarosa,* 16 Conn. App. 18, 27, 547 A.2d 47 (1988). The defendant offers three incidents as support for his claim that the trial judge improperly bolstered the victim's credibility. The first took place, outside the presence of the jury, during a hearing on the defendant's motion for dismissal, and the last two occurred during defense counsel's closing argument.

Concerning the first incident, the defendant argues that the court improperly anticipated the defense argument that the defendant sought to recover the jewelry from the victim in order to prevent her from selling it to finance drug purchases.[2] We have reviewed the transcript and find nothing improper in the court's remarks. Defense counsel and the court were merely discussing the merits of the defendant's motion outside the presence of the jury. We fail to see how this exchange, of which the jury had no knowledge, could have compromised the defendant's right to a fair trial.

The two incidents that occurred during the defendant's closing argument merit closer attention. In the

---

[2] The following exchange took place during the hearing on the defendant's motion:

"The Court: But you're not claiming therefore, that he was merely recovering his own property.

"[Defense Counsel]: Oh, yes.

"The Court: Self assistance. Would not excuse—

"[Defense Counsel]: Not self assistance. She voluntarily gave it back to him.

"The Court: Because he wanted it back.

"[Defense Counsel]: That's right.

"The Court: He was afraid that she was going to sell it in the pawn shop or somewhere else.

"[Defense Counsel]: And use it for drugs.

"The Court: Motion is denied.

"[Defense Counsel]: Take an exception."

first, defense counsel was arguing to the jury that the drugs found in the defendant's car belonged to the victim, whom he characterized as a "drug addict."[3] The second arose in the context of defense counsel's discussion of an unrelated criminal charge pending against the victim. Defense counsel sought to raise the possibility that the victim was to receive consideration on the charge in exchange for her testimony.[4]

[3] This claim grows out of the following:

"[Defense Counsel]: There was a drug dealer in the neighborhood, but it was not Jose Cintron. It was [the victim]. She said that by her own testimony. Now she would have you believe that she sold drugs in the apartment of Mr. Cintron, suggesting perhaps that Mr. Cintron is a big time drug dealer. Nonsense. Obviously, if somebody were going to sell drugs out of his own apartment, he would have the ability to do it himself and cut out the middleman. Why sit there and watch somebody sell drugs? Mr. Cintron has testified, yes, she sold drugs, but she sold drugs on the street. That makes a lot more sense, doesn't it? Selling drugs on the street. But she wasn't selling the drugs for Mr. Cintron. Yes, she's familiar with the envelopes such [as] you see in evidence here because she has had those envelopes—envelopes like them in the past because she's a drug addict.

"[Assistant State's Attorney]: I'm going to have to object at this point, Your Honor. There's absolutely no evidence that she's a drug user. A drug addict.

"The Court: There's no evidence of that.

"[Defense Counsel]: There was testimony of her use of drugs in the bathroom on William Street.

"The Court: He said he found some blood spots and another person was in the room with her and the door wouldn't open and when it did, he didn't—

"[Defense Counsel]: He testified that she used drugs.

"The Court: I'm not here to argue the point. The jury would be grossly in error to conclude from your statement that the [victim] was a drug addict. There's no evidence of that.

"[Defense Counsel]: I'll take an exception.

"The Court: You have it.

"[Defense Counsel]: I think it's up to the jury to decide exactly what was said, Your Honor.

"The Court: Well, fine. What's said. But your characterization of it—the objection to it is sustained and the jury is directed to disregard it.

"[Defense Counsel]: I'll take a strong exception with that, Your Honor."

[4] The statements in question occurred in this colloquy:

"[Defense Counsel]: Jose Cintron is before you and one can only imagine how long it will be before the trial for [the victim] takes place. We know she's facing one charge. Will she face others? Will the fact that she—

The issue we must address is whether the court, by its comments, improperly invaded the jury's function as the sole determiner of witness credibility. *State* v. *Smith,* 200 Conn. 544, 550, 512 A.2d 884 (1986). We are not convinced that the trial court's comments improperly bolstered the victim's credibility. Our review of the record reveals that the judge sought to do nothing more than correct what the state claimed to be defense counsel's mischaracterizations of evidence presented during the trial. See *State* v. *Echols,* 170 Conn. 11, 14, 364 A.2d 225 (1975).

A determination of whether a judge has improperly bolstered the credibility of a witness necessarily turns on the facts of a given case. It is helpful, therefore, to

"[Assistant State's Attorney]: I'm going to object at this point, Your Honor. That has nothing to do with this case as to Mr. Cintron's guilt at all. It's completely irrelevant to these proceedings. It has nothing to do with it.

"[Defense Counsel]: The issue of whether she gets consideration is an issue, Your Honor.

"The Court: You're referring to the fact that she's under arrest now and has a pending charge?

"[Defense Counsel]: Yes, Your Honor.

"The Court: To consider what may happen in that case is pure speculation.

"[Defense Counsel]: And whether she anticipates any consideration—

"The Court: The presumption of innocence—

"[Defense Counsel]:—is worthy of the jury's consideration.

"The Court: Well, there's no evidence that there is. She says no.

"[Defense Counsel]: The jury is entitled to draw—

"The Court: The jury may not—

"[Defense Counsel]:—any conclusion that it wishes.

"The Court:—draw a conclusion unless there's evidence before it. There is no evidence of her expecting any consideration whatever. Because she denies it, does not mean the converse is true.

"[Defense Counsel]: I'll take an exception, Your Honor.

"The Court: Right. [to the jury] You will disregard speculation as to what may happen to that young lady in any court. The presumption of innocence applies to her as well and the arrest of her is not significant in regard to any culpability on her part. You may continue.

"[Defense Counsel]: I'll take an exception.

"The Court: Yes."

contrast the situation here with this court's decision in *State* v. *Camerone,* 8 Conn. App. 317, 513 A.2d 718 (1986). In *Camerone,* this court held that the trial court had improperly bolstered the credibility of a state's witness when he confirmed to the jury that the witness, an alleged accomplice of the defendant, had not received any consideration on his own charges in exchange for his testimony. Id., 329. No such corroboration was given here. The trial court merely stated that the victim had denied making any deal and that there was no other evidence to indicate that a deal had been made. The court informed the jury that the victim was entitled to the presumption of innocence and instructed the jury that it should not speculate as to what might happen to her in the future in some unrelated case.

We recognize that there is a "fine line separating permissible and impermissible judicial conduct"; *State* v. *Delarosa,* supra, 29; and in this case, where the evidence essentially consisted of the word of the defendant versus the word of the victim, the line is very fine. That line, however, was not crossed here. The judge did not take a position of advocacy concerning the outcome of the case, nor did he convey to the jury any opinion regarding the defendant's guilt or innocence. *State* v. *Gordon,* 197 Conn. 413, 425, 504 A.2d 1020 (1985). We are not convinced that defense counsel was hampered in his ability to defend his client. Id.

We conclude that the trial court's comments did not compromise the defendant's constitutional right to a fair trial.

## II

The defendant's second claim is that the court erred in failing to give the defendant's requested missing witness instruction. "The failure to produce a witness for trial who is available and whom a party would natu-

rally be expected to call warrants an adverse inference instruction against the party who would be expected to call that witness."[5] *State* v. *Santangelo,* 205 Conn. 578, 596, 534 A.2d 1175 (1987); *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 674–75, 165 A.2d 598 (1960).

The defendant claims that the state's failure to call the victim's brother to testify merited a missing witness charge.[6] The defendant, as the party seeking the benefit of the missing witness instruction, has the burden of showing that the witness was both available and one whom the state would naturally produce. *State* v. *Hart,* 198 Conn. 424, 428, 503 A.2d 588 (1986). In this case, we are satisfied that the defendant has met his burden of showing that the brother was available to testify.

We focus our inquiry, therefore, on whether the brother was a witness whom the state would naturally produce. Such a witness "is one who is known to that party and who, by reason of his relationship to that party or to the issues, or both, could reasonably be expected to have peculiar or superior information material to the case which, if favorable, the party would produce." *Secondino* v. *New Haven Gas Co.,* supra; *State* v. *Greene,* 209 Conn. 458, 470, 551 A.2d 1231 (1988). The defendant contends that because the victim testified that her brother was present in the room when the defendant took the jewelry from her, the state should have been expected to call him to support the victim's

---

[5] "Omnia presumuntur contra spoliatorem. (All things are presumed against the suppressor of testimony.)" B. Holden & J. Daly, Connecticut Evidence (1988) § 65a.

[6] Although the defendant's request to charge included two other possible witnesses, his brief is limited to the victim's brother. Accordingly, we conclude that claims relating to the other witnesses have been abandoned. See *Czarnecki* v. *Plastics Liquidating, Inc.,* 179 Conn. 261, 262 n.1, 425 A.2d 1289 (1979).

version of events. Because the brother was not called, the defendant asserts, it is reasonable to assume that his testimony would not have benefited the state.

We disagree with the defendant's characterization of the victim's brother as a natural witness for the state. He relies exclusively on the victim's testimony that the brother was in the room, but we note that her testimony is inconsistent on this point. At one point she said he was present when she handed over the jewelry; at another she related that her brother had not yet entered the room when she surrendered her property to the defendant. Given the discrepancies in the victim's testimony, we are not satisfied that the defendant has met his burden of showing that the brother was a witness to the robbery and, therefore, a natural witness for the state to call. See *State* v. *Hart,* supra. The trial court properly refused to give the requested charge.

There is no error.

In this opinion the other judges concurred.