STATE OF CONNECTICUT *v.* MARIE G. MAZZETTA
(5886)

DUPONT, C. J., SPALLONE and O'CONNELL, Js.

Argued October 3, 1989—decision released May 8, 1990

*Lauren Weisfeld,* assistant public defender, for the appellant (defendant).

*Vincent J. Dooley,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Juliett Crawford,* assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant appeals from the judgment of conviction, after a jury trial, of the crime of larceny in the third degree in violation of General Statutes § 53a-124 (a) (1).[1] She claims that the trial court erred (1) in convicting her without sufficient evidence of guilt, (2) in denying her various requests for discovery, adequate notice and continuances, and (3) in improperly commenting on the evidence in its jury instructions. We find no error.

The jury reasonably could have found the following facts. From September 12, 1985, to January 8, 1986, the defendant was employed by a chain of newsstands as the manager of its New Haven store. She usually opened the store on weekdays and occasionally closed

---

[1] General Statutes (Rev. to 1985) § 53a-124 provides in pertinent part: "(a) A person is guilty of larceny in the third degree when he commits larceny as defined in section 53a-119 and: (1) The value of the property or service exceeds one thousand dollars . . . ." Section 53a-119 provides in pertinent part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to: (1) Embezzlement. A person commits embezzlement when he wrongfully appropriates to himself or another property of another in his care or custody."

the store in the evenings. As part of her duties, she operated the cash register, reviewed and coordinated the daily register tapes and summary sales reports, and made bank deposits of cash.

Although December is the chain's busiest month, the gross receipts for December, 1985, from the New Haven store were unexpectedly low. After investigating this anomaly, the chain's bookkeeper reported to the general manager, David Elden, that the summary sales reports from the New Haven store exhibited gaps in the sequential numbering of sales transactions and daily sales totals. These gaps could have resulted only from a manipulation of the cash register tapes at the start or close of daily business. Individual sales had been rung up on the cash register but the leading or trailing record of transactions had been removed from the register's paper rolls. The cash receipts from these transactions were presumably also missing.

On January 8, 1986, Elden called the defendant and informed her that he wished to discuss "problems" with the cash register tapes. The defendant opened the store the next morning but left early, claiming that she had injured her back. For four days she refused to take telephone calls from Elden or store employees, and Elden finally reported his information to the police. The defendant was subsequently arrested, tried and convicted of the crime of larceny in the third degree for an embezzlement occurring between November 7 and December 27, 1985. This appeal followed.

I

The defendant first claims that she was convicted on evidence insufficient to establish that she was the embezzler or that the amount of the loss exceeded $1000. We disagree. The standard of review with respect to a sufficiency of the evidence claim has been stated countless times. The issue " 'is whether the [jury]

could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt.' *State* v. *Bember,* 183 Conn. 394, 397, 439 A.2d 387 (1981)." *State* v. *Steinmann,* 20 Conn. App. 599, 602–603, 569 A.2d 557 (1990). The evidence must be viewed in the light most favorable to sustaining the verdict. *State* v. *Kelly,* 208 Conn. 365, 386, 545 A.2d 1048 (1988); *State* v. *Ruth,* 16 Conn. App. 148, 153–54, 547 A.2d 548 (1988), cert. denied, 209 Conn. 827, 522 A.2d 434 (1989).

Although this case was wholly dependent on circumstantial evidence, such evidence is as probative as direct evidence; *State* v. *Kelly,* supra; and was sufficient to convict the defendant. The jury reasonably could have concluded that the defendant had the best opportunity to commit the crime because she was the store's manager and was, as a rule, the only employee who worked alone in the shop. See *State* v. *Villano,* 176 Conn. 301, 303, 407 A.2d 969 (1978) (opportunity is probative on issue of identity); *State* v. *Bettini,* 11 Conn. App. 684, 688, 528 A.2d 1180, cert. denied, 205 Conn. 804, 531 A.2d 937 (1987). Elden and a store employee testified that before anyone explained the process, the defendant exhibited knowledge of how the register tapes had been manipulated. As manager, the defendant was responsible for checking the daily summary sales records but she did not report the disparities between sales volume and cash receipts nor did she report the missing transaction numbers. While a suspect's knowledge that a crime has been committed does not ordinarily justify an inference of guilt; *State* v. *Villano,* supra, 303–304; the defendant's failure to report such discrepancies, coupled with her knowledge of how the thefts were concealed, justified an inference that she committed this crime. Finally, the jury reasonably could have concluded

that the defendant's abrupt departure from the store on the morning Elden was to ask about the register tapes and her avoidance of further contact was evidence of guilt. See *State* v. *Thomas,* 205 Conn. 279, 286–87, 533 A.2d 553 (1987) (consciousness of guilt manifested by sudden reluctance to communicate with victim's family).

There was also sufficient evidence from which the jury reasonably could conclude that the value of the loss exceeded $1000. Evidence was introduced that the victim was reimbursed by its insurance company for a loss of $3256.87. See *State* v. *Taylor,* 196 Conn. 225, 229, 492 A.2d 155 (1985) (insurance proceeds are probative of the value of stolen property). Elden testified that there were 1563 missing transactions and that the average sale per transaction was $2.24. The defendant's expert acknowledged that the method used to calculate this average sale figure was an acceptable accounting practice. The defendant now argues that this proof of loss must be discounted because the calculation averaged sales statistics from November 1, 1985, through January 6, 1986, and therefore included a sixteen day period outside the time period alleged in the information. The defendant's implication, however, that the average sale per transaction figure would be lower if the sixteen day period was excluded, is unsupported. The jury reasonably could have reached the opposite conclusion, inferring that postChristmas daily receipts would be sharply lower and would have therefore decreased the average dollar per sale figure. The jury was instructed, in accordance with the defendant's request, that the value element of the crime must be proved for the period between November 7 and December 27, 1985. The loss exceeded $1000 if the jury accepted that as few as one third of the missing transactions, at $2.24 per transaction, occurred within this period.

The inference that the loss exceeded $1000 is further supported by the evidence of the missing daily summary totals because the thefts were concealed by removing from the register tapes records of both the individual transactions and the summary totals. Elden testified that there were thirty-three summary totals missing during the fifty-one day period charged. Upon all the evidence presented, the jury, which is presumed to use its common sense in deliberations; *State* v. *Ruth,* supra, 154; could reasonably have concluded that a sufficient number of transactions fell within the period charged and that the loss exceeded $1000.

## II

In her second claim of error, the defendant argues that adverse trial court rulings hampered the preparation of her defense.[2] The following facts are relevant to this claim.

On March 26, 1986, the defendant entered a plea of not guilty to a short form information alleging a larceny in the second degree, occurring on or about October 12, 1985.[3] She filed a motion on May 8, 1986, for a bill of particulars seeking, inter alia, to know the date and time of the offense. On November 3, 1986, the day that jury voir dire began, the state filed a long form information pursuant to Practice Book § 833, encompassing the specifications of the bill of particulars and

---

[2] The defendant also claims that the adverse court rulings denied her effective assistance of counsel. Such a claim is not a proper issue for appellate review; *State* v. *Thomas,* 15 Conn. App. 197, 200 n.1, 543 A.2d 1356 (1988); and we do not address it.

[3] The short form information charges a "larceny in the second degree" but cites General Statutes § 53a-122 which defines larceny in the first degree. Degrees of larceny are distinguished only by the amount of loss; thefts exceeding $10,000 are first degree, thefts exceeding $5000 are second degree, thefts exceeding $1000 are third degree. Because the record and briefs indicate that the court and both parties consistently refer to the original allegation as larceny in the second degree, we do so also.

charging the defendant with larceny in the second degree for losses exceeding $5000 occurring between October 12, 1985, and January 10, 1986. On the next afternoon, November 4, 1986, the state filed a substituted information alleging a larceny in the third degree for losses exceeding $1000, occurring between November 7 and December 27, 1985.

The defendant objected to both filings, claiming that the time frame alleged in the informations was so broad as to prevent her from preparing a defense. She renewed her motion for the extant bill of particulars and submitted a motion for a supplemental bill of particulars. On November 5, 1986, the court ruled on the defendant's discovery motions, denying her request for more specific information on the dates and amount of the larceny. The court also denied the defendant's request for a continuance during which to analyze the cash register tapes or, alternatively, for copies of the tapes so that she could review the material "after-hours."

## A

The defendant claims that the court erred in permitting the state, during the first two days of trial, to change the crime charged from a theft of more than $5000 occurring on one day to, finally, a theft of more than $1000 occurring over a fifty-one day period. The defendant did not object at trial to the substituted informations nor did she make a motion to dismiss on this ground. She squarely raises the issue for the first time in her reply brief. Nevertheless, because the defendant has a due process right to notice of the charges against her, and because the record is sufficiently complete, we will consider the merits of the claim under the plain error doctrine. See Practice Book § 4185; *State* v. *Roque,* 190 Conn. 143, 149–50, 460 A.2d 26 (1983).

The court may permit the state, before or after the start of trial, to file substituted informations to conform to the evidence. Practice Book §§ 623, 624; *State* v. *Secore,* 194 Conn. 692, 699, 485 A.2d 1280 (1984); *State* v. *Ramos,* 176 Conn. 275, 276, 407 A.2d 952 (1978). This decision is within the court's sound discretion and is subject to reversal only for an abuse of that discretion. *State* v. *Ramos,* supra. A substitute information may not prejudice the defendant's due process rights. *State* v. *Vaughn,* 20 Conn. App. 386, 389–90, 567 A.2d 392 (1989). The defendant must provide a specific showing of prejudice resulting from the state's delay in providing notice of the charge against which she must defend. *State* v. *Ramos,* supra, 279–80; *State* v. *Waterman,* 7 Conn. App. 326, 335, 509 A.2d 518, cert. denied, 200 Conn. 807, 512 A.2d 231 (1986).

The grounds for challenging the substitution of informations are few and clearly circumscribed. The defendant here does not claim that the state impermissibly charged her with a different crime; see *State* v. *Jacobowitz,* 182 Conn. 585, 590–91, 438 A.2d 792 (1981); nor does she claim that the state altered a material element of the crime; see *State* v. *Adams,* 14 Conn. App. 119, 124–25, 539 A.2d 1022 (1988) (date and time of thefts are not material elements of crime of larceny). The defendant contends, rather, that the "enlargement" of the dates and the reduction of the amount created prejudicial surprise, denying her an opportunity to prepare a defense.

This bare assertion of prejudice is not sufficient support for her claim. See *State* v. *Ramos,* supra, 279–80; *State* v. *Waterman,* supra. Because she offers no argument as to how she was prejudiced, she asks us, in effect, to find that substitute informations encompassing the changes made here are prejudicial per se. This we cannot do. To the contrary, in cases where even radical changes in the facts of the crime charged were

made by substitute information, courts have still required a specific demonstration of resulting prejudice in the circumstances of the whole case. See, e.g., *State* v. *Ramos,* supra; *State* v. *Waterman,* supra.

In *State* v. *Ramos,* supra, the defendant claimed prejudicial surprise after the state filed a substitute information changing the date of the alleged rape from April 15 to May 22, 1975. Id., 276. Our Supreme Court held that it was "entirely proper for a court to permit an amendment or a substitute information merely to amplify or correct the time of the commission of the offense" on the "well-established rule" that the crime need not be proved on the precise date alleged. Id., 276–77. In *State* v. *Waterman,* supra, the state was permitted to file a series of substituted informations. After jury selection began, the short form information alleging larceny in the first degree was replaced by an information alleging that the defendant defrauded a public community of $38,500. Another substituted information reduced the amount of loss to $2000. Id., 331. This court rejected the defendant's claim of unfair surprise and an inadequate opportunity to prepare a defense.

As in the above cases, the substitute informations in this case did no more than amplify and correct the dates and amount of the thefts to conform to the evidence. Moreover, in both *Ramos* and *Waterman,* the courts considered the totality of the circumstances in deciding whether the defendant was surprised by the changes and whether the defense was hampered.

In *State* v. *Ramos,* supra, the court noted that the arrest warrant provided notice of the correct date of the rape, and found no prejudice to the defendant arising from the change of dates because the defendant offered no alibi defense for the original date. Id., 278–79. There are numerous cases in which courts have "adverted to sources extrinsic to the specific count or

information to determine whether the defendant was sufficiently apprised of the offense charged." *State* v. *Spigarolo,* 210 Conn. 359, 384, 556 A.2d 112, cert. denied,      U.S.    , 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989); see also *State* v. *Frazier,* 194 Conn. 233, 237, 478 A.2d 1013 (1984). Correspondingly, we note that the arrest warrant issued for the defendant alleged an embezzlement during a range of dates between October 12, 1985, and January 10, 1986, providing her with notice that the crime was not a larceny committed on only one date. We also note that her request in her bill of particulars for the dates of the offense is inconsistent with her claim that she believed the charge to be a theft on a single day.

It is undisputed that the defendant made no offer of an alibi defense for the original date of October 12, 1985, nor did she state that she intended to offer an alibi defense for the new dates. As in *Ramos,* the defendant avoids an implication that the state's delay was intentional or due to bad faith. *State* v. *Ramos,* supra, 279 n.4. It is significant that the defendant did not seek a continuance to investigate the new facts or to prepare a defense. See id., 279; *State* v. *Waterman,* supra, 335. Considering the total circumstances, we conclude that the defendant has failed to demonstrate that she was surprised or prejudiced by the modified informations.[4]

In summary, the defendant's claim of prejudice from the substitute informations is made in hindsight. Unlike the defendants in *Ramos* and *Waterman,* she did not

---

[4] There is no merit to the defendant's additional claim that the court abused its discretion by permitting the state to file an amended information during trial on November 14, 1986, to change the victim newsstand's corporate name from "Newsrack, Inc." to "News Rack of New Haven, Inc." Under Practice Book § 624, the court acted within its discretionary authority to allow the amendment of the information. The defendant has failed to demonstrate that she was prejudiced by this substitution of names.

object at trial to the filing of the informations or move to dismiss them. Whatever her view now of the propriety of permitting the state so to change the character of the crime charged, she did not make this argument at the time the informations were filed, or at any time during trial. She did not raise this issue in her motions for judgment of acquittal or for a new trial. Indeed, the defendant did not find that her defense was hindered by the filing of substitute informations until she filed her reply brief. Her claim that she was unfairly surprised, undiscovered and unasserted until months after the allegedly surprising events, is unpersuasive.

Given the defendant's own tardiness in finding this claim of significance, we cannot say that the court had a duty at trial to recognize the import of claims not made, to bear the defendant's burden of demonstrating prejudice, or to give a remedy, such as a continuance, the defendant had not sought. Therefore, the court did not err in accepting the substitute informations. If there was any prejudice to the defendant, it flowed not from the filing of the substituted informations, but from the court's adverse rulings on her motions for more precise information and for time to analyze documents, claims that we review next.

### B

The defendant claims that she was prejudiced by the court's denial of her requests that the state provide more specific times and dates of the thefts and by the denial of her various motions for discovery. She argues that these rulings inhibited her ability to prepare a defense. We do not agree.

A criminal defendant's rights of due process require the state to inform the defendant of the nature and cause of the charges with sufficient precision to enable her to meet the charges at trial. *State* v. *Spigarolo,* supra, 381; *State* v. *Laracuente,* 205 Conn. 515, 518,

534 A.2d 882 (1987), cert. denied, 485 U.S. 1036, 108 S. Ct. 1598, 99 L. Ed. 2d 913 (1988). Unconditional precision is not required; precision need only be sufficient to enable the defendant to prepare a defense, to avoid surprise and to plead her acquittal or conviction as a bar to further prosecutions. *State* v. *Spigarolo,* supra, 383–84.

The defendant may seek more precise information by moving for a bill of particulars, and she bears the burden of showing why the particulars are necessary to the preparation of her defense. Practice Book §§ 831, 832; *State* v. *Laracuente,* supra, 518–19. The court's ruling upon such a motion is within its sound discretion and will not be reversed without a clear showing of prejudice. *State* v. *Spigarolo,* supra, 385.

A defendant cannot merely claim that the pleadings are insufficient; she must show that she was in fact prejudiced in her defense on the merits and must show that substantial injustice resulted from the language of the information. *State* v. *Spigarolo,* supra, 382; *State* v. *Vincent,* 194 Conn. 198, 205 n.12, 479 A.2d 237 (1984). To establish prejudice, the defendant must demonstrate that more precise information was available to the state; *State* v. *Spigarolo,* supra, 386; and that this information was necessary to her defense. Id., 385.

The defendant has done no more than raise "the spectre of prejudice" without demonstrating its impact. *State* v. *Vincent,* supra. Upon the renewal of her motion for a bill of particulars on November 3, the court expressly asked the defendant several times to explain how she was prejudiced by the lack of more specific dates, and deferred ruling on the motion to give the defendant time to provide authority for her arguments. After the substitute information was filed on November 4, and after lengthy arguments by counsel, the court denied the defendant's motion, ruling that the

dates of the thefts as alleged were based on the state's best knowledge and were sufficiently specific.

The state has a duty, within limits, to inform the defendant of the time of the commission of the offense, but it has no duty to disclose information it does not have. *State* v. *Spigarolo,* supra, 386. The state need not " ' "choose a particular moment as the time of an offense when the best information available to the state is imprecise.". . .' " (Citations omitted.) Id.

The defendant here has not proved that the state denied her information in its possession. The substitution of a more limited range of dates on November 4 does not prove that the November 3 information was inadequate. See *State* v. *Waterman,* supra. It illustrates, rather, that the state, even without being so directed by the court, supplied the defendant with more specific information as it became available. The defendant cannot claim that the second information's range of dates, from November 7 to December 27, 1985, in any way varied from the evidence introduced at trial. See *State* v. *Bowman,* 3 Conn. App. 148, 154-55, 485 A.2d 1343 (1985). The evidence presented at trial indicates that there were missing sales transactions on nearly every date from November 7 to December 27, 1985. The dates charged in the information, therefore, were as specific as the dates the defendant moved to be supplied.

Moreover, the defendant did not prove that more precise dates were necessary to her defense. The defendant must show that the information was *necessary,* and " 'not merely that the preparation of [her] defense was made more burdensome or difficult by the failure to provide the information.' " *State* v. *Spigarolo,* supra, 385. The preparation of an alibi defense is a factor to be considered by the court in ruling on a defendant's motion for a further bill of particulars, but "an alibi

defense does not create a per se requirement that the state limit the times in the information more narrowly than the evidence available warrants." *State* v. *Laracuente,* supra, 520.

Although the defendant here claimed that she was hampered in preparing an alibi defense, she did not show that more specific dates were available or necessary. She did not ask for a continuance to develop this defense, nor did she present this defense at trial. See *State* v. *Ramos,* supra, 279. We conclude that, given the available information, the state reasonably delimited the time frame of the alleged offenses and that the trial court did not err in denying the defendant's motion for more specific dates.

The defendant also alleges that she was denied discovery of important items on her original and amended bills of particulars. The record, however, fails to demonstrate that the court abused its discretion in refusing her requests. Every item requested was discussed at trial, and the court repeatedly asked the defendant to provide support for her requests from case law or the rules of practice. Several of the requested documents were either not in the state's possession or did not exist. The amended bill of particulars was denied in its entirety chiefly because the court found the items to be "irrelevant on the face of them or immaterial or so vague as not to be acceptable."[5]

C

The defendant's next claims of error challenge the court's rulings on various motions for continuances. Such rulings will not be overturned on appeal absent

---

[5] In its rulings on the defendant's discovery requests, the following explanation as to why the court was denying the request is typical.

"The Court: For example, it is stated in this motion, 'all audits performed.' I don't know whether that is personal audits or work audits or financial audits or income audits or tax audits or sales tax audits or whatever . . . ."

an abuse of the court's discretion. *State* v. *Aillon,* 202 Conn. 385, 394, 521 A.2d 555 (1987); *Knights of Columbus Federal Credit Union* v. *Salisbury,* 3 Conn. App. 201, 210, 486 A.2d 649 (1985). The defendant bears the burden of demonstrating that the rulings were so arbitrary as to restrict her ability to defend herself. *State* v. *Thomas,* 15 Conn. App. 197, 202, 543 A.2d 1356 (1988); *Knights of Columbus Federal Credit Union* v. *Salisbury,* supra. The defendant argues that she was most prejudiced by the court's refusal to grant a continuance during which to analyze register tapes and other documents or, alternatively, to allow her to make copies so she could review the documents "after-hours." We find no abuse of discretion.

The court verified that the defense counsel and her accountant had fully reviewed the available tapes and records, and that the accountant had prepared summaries of the sale transactions. The court noted that the defense counsel had access to the material during several recesses and after the previous, abbreviated day in court. See *State* v. *Thomas,* supra, 201 (court may consider number of recesses in denying request for continuance). The defendant then asked for copies of the documents so she would "not take up any of the court's time." The court denied the request, noting that neither the original discovery motion, filed six months before and renewed two days before, nor the amended motion, filed just the previous day, requested copies.[6]

---

[6] The following colloquy occurred between the defendant's counsel and the court.

"Defendant: I would again ask that either I be given copies or be given an opportunity to make copies or be given an opportunity—

"The Court: The motion itself and the latest amendment does [not] ask for copies and the court is not going to extend the written request by date of the oral amendment . . . . The court makes the finding that under Practice Book, Section 745, no such showing has been made of good cause specifically with regard to good cause at this time of the trial. The court notes that this case has been on the firm jury list for some time to this court's knowledge and . . . the court has been sitting at least two weeks."

The defendant is unable to demonstrate that she was prejudiced by these denials. The state did not use the register tapes to prove the amount of loss. The loss calculation was based on the detail summary records and only a few register tapes were entered, without objection, into evidence. The defendant's own accountant based his calculation of the loss on his own summaries of the tapes, completed on November 4, before the defendant ever made her requests for time or copies.[7]

Although the defendant describes the evidence as "voluminous," the evidence offered to prove that she had manipulated the register tapes depended on only thirty-three numbers, each a missing daily summary total. This evidence was not put before the jury until November 13, 1986, giving the defendant ample opportunity to examine the tapes and records. The defendant correctly notes that she had no access to the records on the intervening weekend and court holiday, but there were, nevertheless, six full business days between November 4 and November 12, 1986.

There is little merit to the defendant's other claims that she was arbitrarily denied requests for continuances. The court denied as premature the defendant's requests for time to interview surprise witnesses only after the defendant was unable to demonstrate prejudice. The list of new witnesses, all of whom were employees of the newsstand and known to the defendant, had been supplied days before the defendant

---

[7] During the cross-examination of the defendant's accountant, the state specifically inquired as to whether the expert's summaries and analysis suffered from lack of access to the detail tapes.

"The State: Now, would it be fair to say that if a detailed, any portion of the detailed tape was not available to you that you could not—that it could not be a factor into your analysis?

"Witness: No. It would not be fair. You don't need a detailed tape to do this particular calculation . . . . [I]f you got the summary sheet and you tied it into the deposit . . . you can arrive at all the information without going into the detailed tape."

requested continuances and days before these witnesses testified.[8] The defendant did not renew her requests after the witnesses testified. See *State* v. *Chapman,* 16 Conn. App. 38, 43–44, 546 A.2d 929 (1988) (continuance appropriate only after surprise witness has testified). Nothing in the cross-examination of the witnesses indicates that the defendant suffered from lack of preparation. See id., 44.

The court also denied a continuance requested after the state filed its amended information on November 14, 1986, correcting the victim's name from "Newsrack, Inc." to "News Rack of New Haven, Inc." Notwithstanding the defendant's claim that there were additional documents not supplied, the court found that Elden had not been confused by a subpoena in the wrong corporate name and had provided all available tapes, reports, summaries and tax records in either name.

## III

In her last claim of error, the defendant challenges the court's instructions to the jury[9] to disregard the defendant's suggestion, made in her summation, that she and Elden were engaged in a "fight" over the workers' compensation claim she filed after injuring her back on her last morning of employment. The defendant

___

[8] In denying the defendant's request for continuances in which to interview witnesses, the court stated that "with regard to this request under [Practice Book] § 743, [this court] will deny the request with a finding— the period of time since the disclosure has been adequate for counsel to do whatever interviews will be necessary. In any event, there has been no special showing, and no showing of a claim of surprise or disadvantage."

[9] The relevant portion of the court's jury instructions is as follows.

"First of all, I want to first indicate that there was some suggestion in the argument that was made that there was evidence from which you could consider that there was some kind of a fight going on over the workman's compensation claim. I'm going to instruct you that you can ignore such evidence. Your recollection of the evidence is what counts and so I say that again if my recollection is wrong, then you rely on your recollection. I remember that there was a letter that was an exhibit and on January 22 a letter was sent saying in essence, giving the name and address of the

claims that there was evidence of such a fight which reflected on Elden's credibility and would tend to suggest Elden's motive for accusing her of the thefts. The defendant argues that the court's instructions to ignore this evidence bolstered Elden's testimony and improperly withdrew from the jury questions on the witness' bias and motive, thereby depriving her of her rights to a trial by jury and due process rights to a fair trial. This claim is without merit.

The defendant is unable to show any prejudice arising as a result of the court's actions. *State* v. *Echols,* 170 Conn. 11, 16–17, 364 A.2d 225 (1975). The record does not disclose that the judge improperly took a position of advocacy or conveyed his own opinion of guilt or innocence to the jury. *State* v. *Gordon,* 197 Conn. 413, 425–26, 504 A.2d 1020 (1985). The fact that the defendant had filed a workers' compensation claim was before the jury. The defendant fully argued that the injury to her back, rather than her consciousness of guilt, accounted for her refusal to communicate with Elden after January 6, 1986. The defendant fully crossexamined Elden on inconsistencies in his testimony and the issues of his credibility and possible bias were squarely before the jury. Finally, the court was careful to explain that the jury should ultimately rely on its own recollections. In our review of the record, we find no evidence that the court overstepped the fine line of impartiality. See *State* v. *Cintron,* 21 Conn. App. 48, 55, 571 A.2d 139 (1990).

There is no error.

In this opinion the other judges concurred.

---

workman's compensation carrier. I remember the witness testifying maybe eight times that he didn't handle the workman's compensation. He didn't know anything about it. Whether you believe him or not . . . . I don't remember any evidence with a fight over any kind of workman's compensation claim other than the claim was filed. So I'm going to instruct you that if your recollection is the same as mine, you are to completely disregard that comment in your deliberation when you go into the deliberation room."