## STATE OF CONNECTICUT *v.* JOSEPH CARMEN J. CARBONE
## (AC 29480)

Flynn, C. J., and Robinson and Alvord, Js.

Argued May 29—officially released September 1, 2009

*Katharine S. Goodbody*, special public defender, for the appellant (defendant).

*Sean P. McGuinness*, certified legal intern, with whom were *Michele C. Lukban*, senior assistant state's attorney, and, on the brief, *Michael Dearington*, state's attorney, and *John P. Doyle, Jr.*, assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Joseph Carmen J. Carbone, appeals from the judgment of conviction, rendered after a jury trial, of two counts of criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1), one count of criminal possession of a pistol in violation of General Statutes § 53a-217c (a) (1) and one count of possession of narcotics in violation of General Statutes § 21a-279 (a). On appeal, the defendant claims that (1) the trial court improperly allowed the state to amend the information at the close of the state's evidence and (2) he was denied his due process right to a fair trial due to prosecutorial impropriety. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On February 24, 2007, Sergeant John Miller, Officer Bryan Kelly, Officer Edward Lennon and Officer Robert Ranfone of the East Haven police department executed a search warrant at 11 Clark Avenue in East Haven. In executing the warrant, the officers first announced their presence and knocked on the door. No one responded, but the officers heard movement inside the apartment. After waiting only twenty seconds, the officers used a battering ram to gain entry

into the apartment. Upon entry, the officers secured the apartment. The defendant's bedroom door was locked by a dead bolt that had to be forced open by the officers. The defendant and Christina Rascoll were in that bedroom when the officers gained entry to that room.[1] The defendant was holding a dog, and Rascoll was standing on the other side of the bed. As the door was being opened, Lennon observed Rascoll throw something behind the bed. The officers noticed a burning odor that smelled like crack cocaine in the room. After the defendant and Rascoll were brought into another room and secured, Lennon went back into the bedroom to see what Rascoll had thrown behind the bed. He discovered two glass crack pipes, one of which was warm to the touch. Both of these pipes later tested positive for the presence of cocaine. Additionally, Lennon found a black jacket on the bed that contained a loaded pistol with an extra bullet in the pocket. He also found a shotgun loaded with a magazine in the closet.

The officers observed a white residue on the table in the bedroom, which later tested positive for cocaine, and found ammunition for firearms located in the dresser drawers. The officers also found drug paraphernalia in the bedroom, including empty bags, crack pipes, lighters on the dresser and a candy box containing hypodermic needles and a spoon. The defendant's clothing and personal belongings were in the bedroom. The officers also found female clothing in the bedroom, including some clothing in a dresser. The officers seized a Comcast bill that was found in the kitchen area of the apartment. The bill was in the name of Joseph Carbone at 11 Clark Avenue, second floor, in East Haven.

---

[1] In addition to the defendant and Rascoll, Joseph Carbone, Jr., was in the apartment at the time the officers executed the warrant. The officers found him in his bedroom, which was located across the hall from the defendant's room.

This is the same address that the defendant later provided to the police during the customary processing procedures.[2]

The defendant was arrested and charged with two counts of criminal possession of a firearm, one count of carrying a pistol without a permit, one count of criminal possession of a pistol and one count of possession of narcotics. The court granted the defendant's motion for a judgment of acquittal as to the count of carrying a pistol without a permit. The defendant was convicted of the remaining counts. The defendant then filed the present appeal.

I

The defendant first claims that the court improperly permitted the state to amend its information at the close of its case. We disagree.

The following additional facts are necessary to resolve the defendant's claim. The defendant initially was charged with committing the specified offenses on February 23, 2007. At the conclusion of the state's evidence, the state requested permission to amend the information to change the date of the offenses from February 23, 2007, to February 24, 2007. During argument before the court, the state characterized the amendment as simply correcting a scrivener's error,[3]

---

[2] Rascoll also was arrested as a result of this incident. At the time of her arrest, she provided an address indicating that she resided at 1 Pine View Drive in Branford.

[3] The prosecutor argued that "due to a scrivener's error, an error in typing by myself, a mistake that I made, I had noted that the incident occurred on February 23, 2007. I have corrected that to be February 24, which comports with the testimony by the witnesses, which comports with all the documents and all the police reports and the search warrants and all the incidents in the documentation previously provided to [defense counsel] and to his client indicating that the [incident] occurred on February 24.

"There's been no substantial change in the documentation. There's nothing changing in the charge. I haven't added or deleted any charges, and it'd be the state's position that I was merely clarifying the date on which the incident occurred, correcting a scrivener's error that was made by the state."

while the defendant argued that his substantive rights would be prejudiced by the amendment. The court found that no additional or different offenses had been charged in the amendment and that the substantive rights of the defendant would not be prejudiced by the amendment. The court, therefore, granted the state's request to amend the information.

"Before a trial begins, the state has broad authority to amend an information pursuant to Practice Book § 36-17. Once the trial has started, however, the prosecutor is constrained by the provisions of Practice Book § 36-18. . . . Practice Book § 36-18 provides in relevant part: After commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced . . . .

"If the state seeks to amend charges after the commencement of trial, it shoulders the burden of establishing that no substantive rights of the defendant would be prejudiced. . . . Like any other party petitioning the court, the state must demonstrate the basis for its request. Under [Practice Book § 36-18], the state must show: (1) good cause for the amendment; (2) that no additional or different offense is charged; and (3) that no substantive right of the defendant will be prejudiced. This allocation of burden encourages the state to prepare its case carefully because it bears the burden of justifying subsequent adjustments." (Citation omitted; internal quotation marks omitted.) *State* v. *Grant*, 83 Conn. App. 90, 97, 848 A.2d 549, cert. denied, 270 Conn. 913, 853 A.2d 529 (2004). "On appeal, our review of the court's decision to permit an amendment to the information is one of abuse of discretion." *State* v. *Caracoglia*, 78 Conn. App. 98, 101, 826 A.2d 192, cert. denied, 266 Conn. 903, 832 A.2d 65 (2003).

The defendant initially argues that the state failed to demonstrate good cause for the amendment.[4] The defendant does not claim that the state's delay was intentional or due to bad faith. See *State* v. *Ramos*, 176 Conn. 275, 279 n.4, 407 A.2d 952 (1978); *State* v. *Mazzetta*, 21 Conn. App. 431, 440, 574 A.2d 806, cert. denied, 216 Conn. 807, 580 A.2d 64 (1990). The defendant argues, however, that allowing the state to correct its error fails to hold the state to the standard of " 'preparing its case carefully.' " We conclude, to the contrary, that the correction of a typographical error in the original information satisfies the good cause requirement contained in Practice Book § 36-18. See *State* v. *Anderson*, 211 Conn. 18, 31 n.14, 557 A.2d 917 (1989); *State* v. *Rodriguez*, 69 Conn. App. 779, 792–93, 796 A.2d 611, cert. denied, 260 Conn. 938, 802 A.2d 91 (2002).

The defendant further claims that the amendment prejudiced his substantive rights. Specifically, the defendant argues that the change of the date deprived him of his right to defend against the charges adequately. The state counters that the defendant was given sufficient notice of the charges against him and has demonstrated no prejudice from the change in the date of the offense. We agree with the state.

"It is a well-established rule in this state that it is not essential in a criminal prosecution that the crime be proved to have been committed on the precise date alleged, it being competent ordinarily for the prosecution to prove the commission of the crime charged at any time prior to the date of the complaint and within the period fixed by the Statute of Limitations. . . . Thus, it is entirely proper for a court to permit an amendment or a substitute information merely to amplify or to correct the time of the commission of the

---

[4] The defendant conceded at trial that no additional charges or offenses were alleged in the amended information.

offense when time is not a material ingredient of the crime charged." (Citations omitted; internal quotation marks omitted.) *State* v. *Ramos*, supra, 176 Conn. 276–77. "Practice Book § 36-18 is primarily a notice provision. Its purpose is to ensure that the defendant has adequate notice of the charges against which he must defend. . . . It is the defendant's burden to provide a specific showing of prejudice resulting from the state's delay in providing notice of the charge against which [he] must defend." (Internal quotation marks omitted.) *State* v. *Grant*, supra, 83 Conn. App. 102. "Mere allegations of potential prejudice, of dimmed memory or of unavailable but unspecified witnesses are insufficient." (Internal quotation marks omitted.) *State* v. *Ramos*, supra, 280; see *State* v. *Mazzetta*, supra, 21 Conn. App. 438.

Other than the statement that the change in the date deprived him of his ability to defend against the charges adequately, the defendant has not shown how he was prejudiced by the court's decision to allow the amendment. The date of the alleged offense was neither an essential element of the crimes with which the defendant was charged nor an otherwise material factor in his case. When asked by the trial court how his substantive rights would be prejudiced by the amendment, the defendant responded that it would prejudice his right effectively to cross-examine the witnesses. In this regard, the defendant noted that one of the officers who testified was confused about whether the warrant had been executed on February 23, 2007, or February 24, 2007. In response, the court indicated that this fact already had been brought out during cross-examination of that officer so the jury already had information with which to assess the credibility of that officer.

The defendant acknowledged that some documentary evidence had been provided to him that indicated that the date of the search was February 24, 2007. The

defendant did not request a continuance for additional investigation regarding the new date. See *State* v. *Ramos*, supra, 176 Conn. 279; *State* v. *Mazzetta*, supra, 21 Conn. App. 440. The defendant did not offer an alibi defense for the original date of February 23, 2007, or the amended date of February 24, 2007.[5] See *State* v. *Ramos*, supra, 279; *State* v. *Mazzetta*, supra, 440. The defendant does not challenge that it was he who was found in the bedroom he occupied. He therefore should have been aware of what day and what time the police conducted the search that resulted in his arrest. Under these circumstances, the court allowed the state to amend the information to change the date from February 23, 2007, to February 24, 2007.[6] On the basis of our review of the record, we agree that the defendant's substantive rights were not prejudiced by the amendment. We, therefore, conclude that the court did not abuse its discretion in allowing the state to amend the information to change the relevant date from February 23, 2007, to February 24, 2007, to correct the scrivener's error in the original information.

II

The defendant next argues that he was denied his due process right to a fair trial due to prosecutorial

[5] The defendant's theory, rather, was that Rascoll lived at the residence, and, therefore, the state did not prove that he was the individual in possession of the firearms and narcotics found during the search of the apartment.

[6] Specifically, the court stated: "[T]he court cannot discern, based upon what has been presented, what substantive right of the defendant will be prejudiced if I allow this amendment. There is no additional or different offense charged. It appears to be a scrivener's error. Certainly, this matter has been pending for quite some time. Counsel has acknowledged that there are . . . there is material indicating the date of the search was [February 24]. There may be some reports that indicate a heading or a date of [February 23]. There has been testimony in the case already about [February 24], some confusion about [February 23] from the last witness. So, certainly that is evidence from which [defense counsel] can argue affects the credibility of the witness in terms of all the other information he had to offer. So, I think in balancing, the court has to, as described by the Practice Book—court will grant the state—the state's request to amend the information because

impropriety. Specifically, the defendant claims that the prosecutor improperly argued that the defendant was in possession of a gun when he was outside of the apartment prior to the execution of the warrant and that, once he entered the apartment, he proceeded to "consume or smoke or be involved with crack cocaine" with Rascoll. We conclude that the prosecutor improperly argued that the defendant was in possession of the gun later found in the pocket of the jacket found in his bedroom. We also conclude, however, that this impropriety did not deprive the defendant of his due process right to a fair trial.

The defendant concedes that he did not object to the alleged instance of prosecutorial impropriety at trial. "Once prosecutorial impropriety has been alleged, however, it is unnecessary for a defendant to seek to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and it is unnecessary for an appellate court to review the defendant's claim under *Golding*. . . . The reason for this is that the touchstone for appellate review of claims of prosecutorial [impropriety] is a determination of whether the defendant was deprived of his right to a fair trial, and this determination must involve the application of the factors set out . . . in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987)." (Internal quotation marks omitted.) *State* v. *Pascal*, 109 Conn. App. 55, 66, 950 A.2d 566, cert. denied, 289 Conn. 917, 957 A.2d 880 (2008). Furthermore, "[i]n analyzing claims of prosecutorial [impropriety], [whether they are preserved or not], we engage in a two step analytical process. The two steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair

the court finds that there's no additional or different offense charged, and the court does not find any substantive rights of the defendant to be prejudiced under the circumstances presented."

trial. Put differently, [impropriety] is [impropriety], regardless of its ultimate effect on the fairness of the trial; whether that [impropriety] caused or contributed to a due process violation is a separate and distinct question . . . ." (Internal quotation marks omitted.) *State* v. *Velez*, 113 Conn. App. 347, 368–69, 966 A.2d 743, cert. denied, 291 Conn. 917, 970 A.2d 729 (2009), quoting *State* v. *Stevenson*, 269 Conn. 563, 572, 849 A.2d 626 (2004).

"If we conclude that prosecutorial impropriety has occurred, we then must determine, by applying the six factors enumerated in *State* v. *Williams*, supra, 204 Conn. 540, whether the entire trial was so infected with unfairness so as to deprive the defendant of his due process right to a fair trial. . . . These factors include the extent to which the impropriety was invited by defense conduct, the severity of the impropriety, the frequency of the impropriety, the centrality of the impropriety to the critical issues in the case, the effectiveness of the curative measures adopted and the strength of the state's case." (Citation omitted; internal quotation marks omitted.) *State* v. *Pascal*, supra, 109 Conn. App. 67. "To determine whether the defendant was deprived of his due process right to a fair trial, we must determine whether the sum total of [the prosecutor's] improprieties rendered the defendant's [trial] fundamentally unfair, in violation of his right to due process. . . . The question of whether the defendant has been prejudiced by prosecutorial [impropriety], therefore, depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Internal quotation marks omitted.) *State* v. *King*, 289 Conn. 496, 516, 958 A.2d 731 (2008).

The following additional facts are necessary to resolve the defendant's claim of prosecutorial impropriety. Prior to the execution of the search warrant at 11

Clark Avenue in East Haven, the officers conducted a surveillance of the location. This was done for the security and safety of the officers, as well as to determine how many people were inside the residence. During the surveillance, the officers observed the defendant come out of the residence multiple times wearing a dark colored jacket. Specifically, Kelly testified that he "observed the defendant come out of the house multiple times in a dark colored jacket and [speak] with an individual. At one point, he actually got into [a sport utility vehicle], left the residence for about [ten] minutes, came back, went back into the apartment, came back out of the apartment again wearing the same dark colored jacket, spoke to a person curbside and then returned back into his apartment."

At the close of the state's case, the defendant moved for a judgment of acquittal on the count of carrying a pistol without a permit.[7] In support of this motion, the defendant argued that although evidence had been presented that a pistol was found in the pocket of a black jacket in the residence on the night the warrant was executed, no evidence had been presented to establish that he possessed the pistol outside of the residence. The court granted the defendant's motion, concluding that "the evidence [was] deficient in terms of reasonable and logical inferences that the jury could draw that [the defendant] carried [the pistol] upon his person in a public place." In so ruling, the court noted that there was no evidence to indicate how long after the defendant was observed during the surveillance that entry was made into his bedroom. The court also noted that the defendant was not alone at the residence when the warrant was executed.[8]

---

[7] General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his or her person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28 . . . ."

[8] The court denied the defendant's motion for a judgment of acquittal as to the remaining counts, stating: "The court is satisfied that, based upon all

The defendant argues that because there was no evidence that he was in actual possession of the firearms or narcotics, the state was required to prove that he constructively possessed these items. Nevertheless, the defendant argues that the prosecutor improperly argued, during rebuttal argument, that "what's very important is [that Officer Kelly] testified to you that prior to executing this search warrant, for [the police officers'] safety and for their security and to know what's going on at the location when they're executing the search warrant, he conducted surveillance outside of this location and observed the defendant go in and out several times. Again, possession of the residence. In and out of the residence, gun in his pocket, goes in the house, takes off his jacket in the room and begins to either consume or smoke or be involved with crack cocaine with Christina Rascoll behind a dead bolted locked door within the apartment."

We first consider the prosecutor's comment that the defendant was in possession of a gun when going in and out of the residence. At the time that the prosecutor made this statement, the court already had granted the defendant's motion for a judgment of acquittal on the count of carrying a pistol without a permit. According to the state, the prosecutor's statement was not made for the purpose of establishing that the defendant had been carrying a pistol without a permit. It was made, rather, with regard to the remaining weapons possession counts, to establish a connection between the defendant and the pistol through the defendant's connection to the jacket. The state argues, therefore, that the prosecutor's statement was based on a reasonable inference. We disagree with the state. In granting the

the evidence that has been presented, both direct and circumstantial, [and] the reasonable and logical inferences therefrom, such evidence, if credited by a jury, would reasonably permit a finding of guilt with respect to those counts. So, the motion for a judgment of acquittal on those counts is denied."

defendant's motion for a judgment of acquittal as to the count of carrying a pistol without a permit, the court noted that this charge was not supported by the evidence. Because that charge already had been removed from the case because of evidentiary insufficiency, it was improper for the prosecutor to refer to it during closing argument. See *State* v. *Dews*, 87 Conn. App. 63, 79, 864 A.2d 59, cert. denied, 274 Conn. 901, 876 A.2d 13 (2005).

Having concluded that this statement was improper, we now determine whether the defendant was denied a fair trial as a result of it. In doing so, we must apply the *Williams* factors to the prosecutor's comment that the defendant possessed the gun when he went in and out of the residence. As to the first factor, the state contends that the comment was invited by defense counsel's argument that the coat that was found in the bedroom did not belong to the defendant and was not the same coat he had been wearing outside. We disagree, however, that the comment was invited by the defendant. As to the remaining *Williams* factors, we note that the comment was not severe, nor was it objected to by defense counsel during trial.[9] Because the defendant did not object to the comment, the court did not adopt any curative measures to remedy the perceived impropriety. We note, however, that in its general charge, the court properly instructed the jury that the lawyers' closing arguments were not evidence and could not be considered by the jury in determining the facts. The impropriety was infrequent and was limited to the statement referred to previously, which took

[9] "[W]hether a new trial or proceeding is warranted depends, in part, on whether defense counsel has made a timely objection to any [incident] of the prosecutor's improper [conduct]. When defense counsel does not object, request a curative instruction or move for a mistrial, he presumably does not view the alleged impropriety as prejudicial enough to jeopardize seriously the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Velez*, supra, 113 Conn. App. 369.

place during the state's rebuttal argument. Although the defendant argues that the misstatement went to the heart of the state's case, that is not the case, as the court already had granted his motion for a judgment of acquittal on the charge of carrying a pistol without a permit. Finally, we note the strength of the state's case. Three officers testified regarding the execution of the warrant and what they found inside the residence on the night in question. On the basis of the foregoing, we cannot conclude that there is a reasonable likelihood that the jury's verdict would have been different absent the prosecutor's improper statement.

We next consider the prosecutor's statement that once inside the residence, the defendant began "to either consume or smoke or be involved with crack cocaine with Christina Rascoll behind a dead bolted locked door within the apartment." As to this comment, the defendant argues that there was no evidence that he was smoking crack cocaine. He contends, rather, that the evidence showed only that he was in a room where cocaine was being consumed and that Rascoll was possessing and smoking the cocaine. We conclude, however, that the prosecutor's comments were based on reasonable inferences drawn from the evidence presented at trial.

At the outset, we find it highly significant that the defendant has not challenged the sufficiency of the evidence regarding his conviction of possession of narcotics in violation of § 21a-279 (a).[10] This section provides in relevant part that "[a]ny person who possesses

---

[10] General Statutes § 21a-279 (a) provides: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

or has under his control any quantity of any narcotic substance" is subject to the criminal penalties set forth therein. General Statutes § 21a-279 (a). "Pursuant to our rules of law, § 21a-279 (a) requires that the state . . . establish beyond a reasonable doubt that the accused *knew* of the character of the drug and its presence and exercised dominion and control over it. . . . Where . . . the contraband is not found on the defendant's person, the state must proceed on the alternate theory of constructive possession, that is, possession without direct physical contact. . . . Where the defendant is not in exclusive possession of the [place] where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference. . . . Further, to convict the defendant of this crime, the state had to prove that the defendant, and *not some other person*, possessed a substance that was of narcotic character with *knowledge* both of its narcotic character and the fact that he possessed it." (Emphasis in original; internal quotation marks omitted.) *State* v. *Diaz*, 109 Conn. App. 519, 524–25, 952 A.2d 124, cert. denied, 289 Conn. 930, 958 A.2d 161 (2008).[11]

---

[11] The court charged the jury as follows: "Constructive possession means possession without direct physical contact. To prove either actual or constructive possession of a narcotic substance, the state must prove beyond a reasonable doubt that the defendant knew of the narcotic character of the substance and its presence, and intentionally exercised dominion and control over it.

"You will recall and apply my prior instruction on intent. The term dominion and control means that the defendant intended to and did exercise a direct control over the substance, again, with the knowledge of its character.

"Now, in connection with constructive possession, there is another rule of law of which you must be aware. The rule is this: where the defendant is not in exclusive possession of the premises where the narcotic substance was found, in other words, the situation where the defendant shares possession of the premises with another person, it may not be inferred that the defendant knew of the presence of the narcotic substance and had control of it unless there are other circumstances tending to buttress such an infer-

Because the contraband was not found on the defendant's person, the state was required to prove that he possessed it constructively. As to the strength of the state's case, however, we note that narcotics possession cases relying on constructive possession require a jury to make more inferences to establish dominion and control than that required in cases of actual possession in which the contraband is found on the defendant's person. With regard to the evidence from which the jury could draw reasonable inferences, there was testimony that when the officers gained entry into the defendant's bedroom, they noticed a burning odor that smelled like crack cocaine. They found two glass crack pipes, one of which was warm to the touch.[12] Although only one of the pipes was warm, they both tested positive for the presence of cocaine. They also found a white residue on the table in the bedroom, which later tested positive for cocaine, and drug paraphernalia, including empty bags, crack pipes, lighters and a candy box containing hypodermic needles and a spoon. Although male and female clothing was found in the bedroom, it appeared that all of the defendant's clothing and personal belong-

ence, that is, other evidence tending to support the inference that he knew of the presence of the narcotic substance and had intentional control over it. You may not infer possession from the mere fact that the defendant, along with others, occupies or had access to the premises wherein the narcotic substance was found.

"Therefore, if you find that the defendant was not in exclusive possession of the premises where the narcotic substance was found, in order to infer that he knew of its presence and intended to and did exercise control of it, you must also find beyond a reasonable doubt that there are other circumstances which tend to support that inference. Whether the defendant had possession of the narcotic substance, as alleged in this count, is a question of fact for you to decide."

The court later repeated its charge regarding exclusive possession as to both the firearms and narcotics counts in response to a note from the jury.

[12] The defendant argues that because the officers observed Rascoll throw something behind the bed and only one of the pipes was warm, the evidence showed only that Rascoll had been possessing and smoking the cocaine. We agree with the state that just because only one of the pipes was warm does not establish that only one person had used it or that the person who used it was Rascoll.

ings were in that room.[13] The officers seized a Comcast bill from the apartment with the defendant's name on it. The address on the bill was 11 Clark Avenue, second floor, in East Haven. This is the address that the defendant later provided to the police following his arrest. Upon her arrest, however, Rascoll indicated to police that she lived in Branford. In light of this evidence, the prosecutor properly invited the jury to draw a reasonable inference that the defendant consumed or smoked or was involved with the crack cocaine. See *State* v. *Swain*, 101 Conn. App. 253, 272, 921 A.2d 712 ("the prosecutor had the prerogative to invite the jury to draw reasonable inferences from the facts in evidence and could argue on the basis of such inferences"), cert. denied, 283 Conn. 909, 928 A.2d 539 (2007). Because the prosecutor's statement was not improper, the defendant cannot prevail on his claim of prosecutorial impropriety with regard to this comment.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[13] Miller testified as follows:

"Q. Okay. At any time at the scene, do you recall, did the defendant indicate that bedroom—whether it was his bedroom or not, to you?

"A. Basically [I] took it for granted that it was his bedroom. All his personal belongings and clothing was in that bedroom.

"Q. Okay. So, the clothing that you observed in there appeared to be the defendant's clothing?

